THE PEOPLE OF THE STATE OF NEW YORK ex rel. SARAH T. COCKCROFT, as Executrix of and Sole Legatee and Devisee under the Last Will and Testament of JOHN V. COCKCROFT, Appellant, *v.* RUDOLPH P. MILLER and Others, Constituting the Board of Appeals of the Board of Standards and Appeals, under the Authority of Sections 718 and 718-d of the Greater New York Charter, Respondents.

First Department, May 2, 1919.

Municipal corporations — city of New York — powers of board of appeals under provisions of Greater New York charter on appeal from orders requiring installation of automatic sprinkler, fire alarm system and the establishment and maintenance of a fire drill in a factory building in compliance with provisions of Labor Law — when appeal sent back for rehearing before whole board — when. fire drill order not required under section 83a of Labor Law — when installation of sprinkler system required under section 83b of Labor Law — phrase " people employed " as used in section 83b of Labor Law construed — when prima facie case for order requiring installation of sprinkler system established — constitutional law.

Subdivision 5. of section 719 of the Greater New York charter, providing for an appeal to the board of appeals, with power to reverse any order made, does not mean that said board has any general power to nullify the provisions of the Labor Law providing for protection against fire in certain buildings, but rather that its power is limited to cases " where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of the law." This would include their right to vary the law requiring installation of a sprinkler and fire alarm system, but would not include fire drills.

Under section 718a of the Greater New York charter, providing that a concurring vote of five members of the board of appeals is necessary to a decision, unless five of the seven members concur in the opinion that the circumstances justify varying the statute, then it must be observed.

Where it appears that an appeal before the board of appeals has not been heard by the whole board, and that upon such a hearing the appellant may succeed in getting five concurring votes, the Appellate Division should refuse to review the determination and should send the appeal back for a rehearing before the whole board. Where, however, there is a vote of four to one or three to two against the appellant and it is thus obviously impossible to obtain the concurrence of five votes in favor of the appellant, the matter need not be remitted for a rehearing, as the result could not possibly be changed.

Hence, where on appeal from an order of the board of appeals requiring the installation of a fire alarm system and a fire drill, it appears that the five members of said board who were present voted four to one in favor of said appeals, the orders should be sent back for a rehearing before the full board.

Although the board of appeals has no right to vary the law with respect to fire drills, it has the same right that the fire commissioner has to determine the applicability of the law in order that it may be enforced.

Since under section 83a of the Labor Law it is not necessary to install fire alarm signal systems or fire drills in buildings in which every square foot of area is protected by an automatic sprinkler having two adequate sources of water supply, it is oppressive and improper to require at one and the same time the installment of automatic sprinklers, the alarm system, and fire drills. The two latter should only be required in the alternative that a sufficient sprinkler system is not installed within a reasonable time.

A factory building in which fireproofed wooden trim is used is not exempted from the provision of section 83b of the Labor Law requiring an owner of a factory building " in which wooden flooring or wooden trim is used and more than two hundred people are regularly employed above the seventh floor " to install an automatic sprinkler system.

The measure of the aforesaid requirement for a sprinkler system is the presence of more than two hundred people who are regularly employed above the seventh floor, giving the usual and ordinary interpretation to the words " people employed."

A *prima facie* case is made out for an order requiring the installation of a sprinkler system when it is shown that on an inspection there were more than two hundred persons employed, leaving it to the owner to show that as a usual thing less than two hundred were employed.

The aforesaid provision of section 83b of the Labor Law requiring the installation of a sprinkler system is applicable to a building occupied mainly by manufacturing jewelers who do not work with or upon inflammable materials, and is constitutional.

CLARKE, P. J., and LAUGHLIN, J., dissented in part.

Appeal by the relator, Sarah T. Cockcroft, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 9th day of September, 1918, dismissing a writ of certiorari and confirming a decision of the board of appeals of the city of New York sustaining three orders of the fire commissioner.

*W. H. L. Edwards* of counsel [*Harold R. Medina* with him on the brief; *Edwards & Murphy*, attorneys], for the appellant.

*William A. Walling* of counsel [*Terence Farley* and *F. E. V. Dunn* with him on the brief; *William P. Burr, Corporation Counsel*], for the respondents.

Shearn, J.:

The three orders were served together on December 15, 1916, and required the owner of the Cockcroft Building at 71–73 Nassau street to install (1) an automatic sprinkler; (2) a fire alarm system, and (3) to establish and maintain a fire drill in the said building. The orders were served in the courtroom during the trial of *Cockcroft* v. *Mitchell*, which resulted in a decision of the Special Term sustaining orders of the Industrial Commission of the Labor Department requiring structural changes in the building with respect to additional means of exit, which decision was unanimously affirmed by this court on the opinion at Special Term. (187 App. Div. 189.) That decision sustained the constitutionality of the provisions of the Labor Law under which the orders were made and decided that the Cockcroft Building is a factory building and unsafe for occupants in case of fire. The building is sixteen stories high and is a tenant factory and office building occupied by 97 tenants with a total occupancy of 605 persons. The building is occupied almost exclusively by jewelers, opticians and lapidaries, although on the seventh floor there are general offices occupied by lawyers, insurance brokers and the like. At the time of the inspection there were 354 persons regularly employed above the seventh floor. These occupants comprised 140 employees as defined in section 2 of the Labor Law (Consol. Laws, chap. 31 [Laws of 1909, chap. 36], as amd. by Laws of

1913, chap. 529),* to wit: "The term 'employee,' when used in this chapter, means a mechanic, workingman or laborer who works for another for hire;" 52 office employees in factories, 62 employees in non-factory offices, and 100 employers of labor. When the matter came before the board of appeals, three orders were discussed as two separate propositions: (1) As to whether the order directing the installation of a sprinkler system should be sustained, and on this proposition the five members of the board of appeals who were present voted one in favor of the appeal and four against it; and (2) whether, assuming the validity of the sprinkler order, it was lawful for the fire commissioner to impose simultaneously orders for the installation of a fire alarm system and a fire drill, on which proposition the five members of the board of appeals who were present voted four in favor of the appeal and one against, whereupon the appeal was denied on the theory that five concurring votes were necessary for a reversal, but that any number of concurring votes less than five required a denial of the appeal.

The first point of the appellant which requires consideration is whether or not there was a legal decision by the board of appeals in either case and, if not, whether the appeal should be sent back to the board of appeals for a rehearing. Under section 718 of the Greater New York charter (Laws of 1901, chap. 466, as added by Laws of 1916, chap. 503) a board of standards and appeals is established, consisting of the fire commissioner, the superintendent of buildings, the chief of the uniformed force of the fire department, and six other members to be appointed by the mayor. Under section 718-d of the charter (added by Laws of 1916, chap. 503, as amd. by Laws of 1917, chap. 601) the board of appeals consists of seven members, to wit, the chief of the uniformed force of the fire department, and the six appointed members of the board of standards and appeals, and this section further provides: "Hearings on appeals shall be before at least five members of the board of appeals, and the concurring vote of five members of the board of appeals shall be necessary to a decision." Subdivision 1 of section 719 (as added by Laws

---

* Since amd. by Laws of 1917, chap. 694.— [REP.

of 1916, chap. 503) provides that: " An appeal may be taken to the board of appeals from any order, requirement, decision or determination made by * * * the fire commissioner under the authority of title three of chapter fifteen of this act," which includes the orders under review. Subdivision 4 thereof provides: " An appeal stays all proceedings in furtherance of the action appealed from, unless the officer from whom the appeal is taken certifies to the board of appeals after the notice of appeal shall have been filed with him that by reason of facts stated in the certificate, a stay would, in his opinion, cause imminent peril to life or property, in which case proceedings shall not be stayed otherwise than by a restraining order which may be granted by the board of appeals or by the Supreme Court, on application, on notice to the officer from whom the appeal is taken and on due cause shown." Subdivision 5 thereof provides: " The board of appeals may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from and shall make such order, requirement, decision or determination as in its opinion ought to be made in the premises, and to that end shall have all the powers of the officer from whom the appeal is taken. Where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of the law, the board of appeals shall have power in passing upon appeals, to vary or modify any rule or regulation or the provisions of any existing law or ordinance relating to the construction, structural changes in, equipment, alteration or removal of buildings or structures, or vaults and sidewalks appurtenant thereto, so that the spirit of the law shall be observed, public safety secured and substantial justice done. * * * The decision shall be in writing and shall be filed in the office of the board and promptly published in the bulletin of the board." Section 719-a (as added by Laws of 1916, chap. 503) authorizes the Supreme Court to review any " decision of the board of appeals upon appeal " on the petition of a person aggrieved " setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality." The orders in question were issued by the fire commissioner under section 83-b of the Labor Law (added by Laws of 1912, chap. 332,

as amd. by Laws of 1915, chap. 347) as to automatic sprinklers and under section 83-a thereof (added by Laws of 1912, chap. 330, as amd. by Laws of 1916, chap. 466)* as to the fire alarm signal system and fire drills. The requirements for the installation are statutory. The fire commissioner has no discretion in the matter but issues the orders because he is the official upon whom is placed the responsibility for compelling obedience to the statutes. I do not think that this provision for an appeal, with power to reverse any order made, means that the board of appeals has any general power to nullify the provisions of the Labor Law, but rather that its power is limited to cases " where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of the law," in which case it may vary or modify any provision of " any existing law or ordinance relating to the construction, structural changes in, equipment, alteration or removal of buildings or structures, or vaults and sidewalks appurtenant thereto, so that the spirit of the law shall be observed, public safety secured and substantial justice done." This by liberal construction would include their right to vary the law requiring installation of a sprinkler and a fire alarm system but would not include fire drills. Ordinarily, therefore, what the board of appeals would have to decide would be, whether there are practical difficulties or unnecessary hardship in carrying out the strict letter of the law which would justify it in varying the law. This indicates the reason for the requirement in section 718-d of the charter that a concurring vote of five members of the board of appeals shall be necessary to a decision. This amounts to saying that unless five of the seven members concur in the opinion that the circumstances justify varying the statute, then the requirements of law enacted by the Legislature must be observed. When only five members of the board sit and they divide, as here, in one case four to one against appellant, and in another case four to one in his favor, is there in either or both cases a legal decision? As the appellant can never get relief except by the concurring vote of five members, the only practical importance of deter-

* Since amd. by Laws of 1917, chap. 634, and Laws of 1918, chap. 627.— [REP.

mining whether there is a legal decision in the cases above assumed, and existing here, is with relation to the right to a review in the Supreme Court on certiorari. The statute is clumsily drawn, and should be amended for the sake of clarity. But it does not follow that it is unworkable. If this question is considered as a matter of common sense, and not as a mere matter of hair_splitting, the conclusion is reasonably clear. Where only five members participate, and vote four to one in favor of the appellant, it is the plain right of the appellant to have the matter reheard before the entire board of seven members, so that he may enjoy the right which the statute gives him of securing a modification of a harsh or unnecessary requirement, provided five members of the board concur. In a case where the appellant has obtained either three or four votes on a hearing before five members, and it is thus quite possible for him to obtain a modification if the whole board sits, the whole board should rehear the matter and not evade its duty and attempt to pass the matter on to the court. Accordingly, where it appears that the appeal has not been heard by the whole board, and that upon such a hearing the appellant might succeed in getting five concurring votes, this court should refuse to review the " determination " and send the appeal back for a rehearing before the whole board. Where, however, there is a vote of four to one or three to two against the appellant, and it is thus obviously impossible to obtain the concurrence of five votes in favor of the appellant, it would be an idle proceeding to remit the matter for a rehearing which cannot possibly change the result. There remains, of course, the possible case of a vote of four to three in favor of the appellant in the full board, but here too, as the appellant obviously cannot upon a rehearing obtain five concurring votes, the sensible way to treat the matter is to consider the order affirmed and reviewable on certiorari following the general course in the courts where an appellant's failure to secure a majority, through a tie vote in an appellate court, results in the affirmance of the order or judgment appealed from. It follows, therefore, that the order for the installation of a fire alarm system and the order for the fire drills should be sent back for a rehearing before the full board. With respect to the fire drill order, although the board of appeals has not,

in my opinion, the right to vary the law, it has the same right that the fire commissioner has to determine the applicability of the law in order that it may be enforced. Now the point about the fire drill order is that the owner is not required, under section 83-a of the Labor Law, to install either fire alarm signal systems or fire drills in buildings in which every square foot of the floor area on all stories is protected by an automatic sprinkler system having two adequate sources of water supply. But the appellant has been ordered to install a sprinkler system, and if this requirement is obeyed there will be no occasion for the fire alarm signal system or fire drills. It appears, therefore, that it was oppressive and improper to require, at one and the same time, the installation of automatic sprinklers and the alarm system and fire drills. At least, the two latter should have been required in the alternative that a sprinkler system with two adequate sources of water supply and otherwise conforming to the law should not be installed within a reasonable time.

The order for the installation of the sprinkler system should, therefore, be considered upon the merits.

Section 83-b of the Labor Law provides: " In every factory building over seven stories or over ninety feet in height in which wooden flooring or wooden trim is used and more than two hundred people are regularly employed above the seventh floor or more than ninety feet above the ground level of such building, the owner of the building shall install an automatic sprinkler system approved as to form," etc. This building does not have wooden flooring. It does have wooden trim, but as this wooden trim is electrically treated with a view to rendering it incombustible, which was at the time of the construction of the building expressly provided for in section 105 of the Building Code, a similar provision being now contained in section 356 of the present Building Code, it is contended that the building is not within the provisions of the statute. We are dealing, however, with a State law which is of course superior to any provision in the Building Code. The statute does not except fireproofed wood. Indeed it is open to serious question whether there is any such thing as incombustible wood, for Mr. Holden, one of the members of the board of appeals, who voted with the appellant, said:

First Department, May, 1919.          [Vol. 187.

" I guarantee to use it as kindling wood after a lapse of a certain period, a number of months." If the Legislature desires to except fireproofed wood, it is competent for it to do so, but until it has done so the only thing for the court to do is to enforce the plain provisions of the statute, and, therefore, it is clear that this building is within the provision of the statute.

The next and more serious question is the construction of the provision referring to a factory building in which " more than two hundred people are regularly employed above the seventh floor." The contention of the appellant is that this means " employees " in the sense in which that term is defined in section 2 of the Labor Law as above quoted, that is to say, mechanics, workingmen or laborers, and, accordingly, all employers and non-factory employees, such as accountants, clerks, stenographers and the like should be excluded in making the count of persons to determine the necessity for installing a sprinkler system. If the provision read, " A building in which there are more than two hundred regular employees," it is obvious that employers would not be included and also, as it has been decided that the term " employee " as used in the law does not include a stenographer, accountant, typist, bookkeeper or clerk (*People* v. *Interborough Rapid Transit Co.*, 169 App. Div. 32), that no office employees and no persons employed in non-factory quarters would be included, but that the count would be exclusively of workingmen, mechanics and laborers. But the statute does not so read and the Legislature has with evident intention omitted to make the number of " employees " the measure of the requirement to install a sprinkler system and has made the measure instead the number of " people * * * regularly employed."

It is unnecessary to decide whether employers are to be included in the count, for there were more than 200 persons employed or engaged in work above the seventh floor excluding employers. The natural and customary interpretation of the words " people * * * employed," apart from the context, would be people hired and paid and directed by others commonly known as employers, and would thus exclude employers. But considering the broad purpose of the act, enacted to safeguard human life, and the omission in that section of

the technical term "employees," it may well be, as argued by the respondent, that the expression "people * * * employed" was used in the sense of "persons engaged," or occupants, and this notwithstanding the fact that in various sections of the Labor Law the term "occupants" is more than once used in a technical sense as distinguished from "employers." However this may be, it seems reasonably clear that all persons who work for hire are properly included in the phrase "people * * * employed." Where the statute in so many sections carefully uses the word "employees" when it is obviously intended to refer only to workingmen, mechanics and laborers and fails to in this case, I see no reason for departing from the natural and customary meaning of the words and limiting it so as not to take into account all who are hired and regularly work for hire, simply because all persons who are hired are in a general sense employees and the term "employees" as defined for specific purposes in certain sections refers only to workingmen, mechanics and laborers. Indeed there is one section of the law in which the word "employees" is specifically used where the plain intent of the law is to include all persons engaged in work. Take section 85, referring to size of rooms. It reads: "No more employees shall be required or permitted to work in a room in a factory * . * * than will allow to each of such employees, not less than two hundred and fifty cubic feet of air space." There the meaning of the word "employees" as first used obviously means "persons," for the purpose of the provision is to provide a certain amount of cubic feet of air space for the workingmen, laborers and mechanics. Persons other than employees would use up the air space just as effectively as workingmen and it would be impossible to obtain the requisite air space for employees, technically referred to, if a large number of clerks, stenographers and accountants were permitted to crowd into the room. What we are required to do is to interpret this provision liberally and so as to carry out the plain intent of the statute. While it may be generally true that the act was passed in the interest of workingmen and many of the provisions specifically refer to them, the intent of this "sprinkler section" was to protect human life from fire perils. The number of persons working on a given

floor of a building or working above the seventh floor obviously has a direct relation to such a fire peril as panic. It, therefore, seems reasonable to conclude that the Legislature meant to make the measure of this particular requirement for sprinklers the presence of more than 200 people who are regularly employed above the seventh floor, giving the usual and ordinary interpretation to the words " people  *  *  * employed." As there were 254 persons employed and engaged at work above the seventh floor of this building, exclusive of the 100 employers, we are of the opinion that the building came within the requirements of section 83-b of the Labor Law, governing the installation of automatic sprinklers.

It is further contended that the word " regularly " if given any significance requires that more than a single inspection shall be made, and that the inspection made on an isolated occasion is not enough to make out a case of regular employment; that the statute contemplated a series of inspections which should show the average number of persons employed over a period of six months or a year or in any event a reasonable period. Of course the mere finding of more than 200 persons at work in a building on a given date would not bring the building within the law if it appeared that the occasion was unusual and that ordinarily the number was under 200. Considering the difficulties in the way of enforcing these statutes and the ample opportunity afforded the owner to bring out the true state of facts, and giving the usual presumption of good faith and regularity to the acts of public officials, it seems to me that a *prima facie* case is made out for the order when it is shown that on an inspection there were more than 200 persons employed, leaving it to the owner to show that the occasion was spasmodic or unusual and that as a usual thing less than 200 were employed.

Finally, it is claimed that section 83-b of the Labor Law is unconstitutional if held applicable to such a building as the Cockcroft Building, occupied mainly by manufacturing jewelers who do not work with or upon inflammable materials and whose offices present no fire risk whatever, and because there was no testimony and no data before the Factory Investigating Commission with respect to the type of building here involved. We have already held the act constitu-

tional as applicable to such a building as this. (*Cockcroft* v. *Mitchell*, 187 App. Div. 189.) It is claimed, however, that the case is radically different, as the question is here whether the building contained such inflammable or combustible material as to render reasonable the requirement for the installation of sprinklers. I do not think that the question is essentially different although there is more ground for holding the sprinkler requirement to be unreasonable than existed in the case of exits. As we held in the other case, the question of panic is one of the great perils to be guarded against. The fact that a building would not readily catch on fire or burn does not meet the danger of panic, resulting from the presence of a very hot and apparently dangerous fire in neighboring buildings, or the penetration of smoke to the different floors either from without the building or from a small fire that might start in some of the offices. The Legislature evidently conceived that a sense of security would be given employees if the building were adequately equipped and protected as required by the law and that this would tend to decrease the danger from panic. However this may be, we think the question is one for the Legislature, and also that, as to whether the matter was thoroughly investigated by the Factory Investigating Commission or not prior to the enactment of the law, it is to be presumed that the Legislature acted upon adequate information and due consideration. We are, therefore, of the opinion that the order with respect to automatic sprinklers should be affirmed. It follows that the order appealed from in so far as it dismisses the writ of certiorari to review the orders for the installation of a fire signal system and for fire drills should be reversed and the matter remitted to the board of appeals for a rehearing before the full board, and in so far as it sustains the order for the installation of an automatic sprinkler system it should be affirmed, without costs.

LAUGHLIN, SMITH and MERRELL, JJ., concurred.

CLARKE, P. J.:

In considering this fire risk legislation, I am of the opinion that the words " people * * * regularly employed " should be construed broadly and should be held to include

First Department, May, 1919.          [Vol. 187.

employers as well as those working for wages or salaries. The panic risk increases with the number of people exposed, and is not limited by the question of whether they pay salaries and wages or are paid. In other respects I concur.

LAUGHLIN, J., concurred.

Order in so far as it dismisses writ to review orders for installation of fire signal system and for fire drills, reversed and the matter remitted to the board of appeals for rehearing before the full board; in so far as it sustains order for installation of automatic sprinkler system, affirmed, without costs. Order to be settled on notice.