PEOPLE ex rel. MARK COTTON, GREATER NEW YORK DEVELOPMENT COMPANY and THE KINGSBORO REALTY COMPANY, Relators, *v.* JOHN P. LEO et al., Respondents.

(Supreme Court, Kings Special Term for Trials, February, 1920.)

Certiorari — when determination of board of appeals will be annulled — garage.

> Where the action of the board of appeals in granting a permit for the erection of a public garage in a highly restricted residential district of Brooklyn appears to have been based upon the contention that there being no such garage in that locality there should be one, and it further appears that the decision of the board in fixing the area of the property deemed to be affected was at variance with the board's general rules on the subject previously adopted, its action in including the property itself as a part of that deemed to be affected was improper and its determination will be annulled on certiorari, with costs.

CERTIORARI proceedings.

Louis H. Pink and Morris M. Baker, for relators.

William P. Burr, corporation counsel (William T. Kennedy, of counsel), for respondents.

Charles F. Kingsley, for intervenor.

CROPSEY, J.   The board of appeals has permitted the erection of a garage in a residence district so prescribed by the zoning regulations.  This is a certiorari to review that action.  The property in question is located on the westerly side of Ocean avenue, in the borough of Brooklyn, about 140 feet south of Avenue H.  Immediately to the south of the plot upon which the garage is to be erected is the cut of the Long Island railroad.  The garage is to have a frontage of over 100 feet and a depth of over 130 feet, and is to accommodate 125 cars.  This property is located in a highly restricted residential section of Brooklyn. There are no other public garages nor business structures of any kind near the location.  Strange as it may seem that fact appears to have been the controlling one with the board of appeals, for its action seems to have been based upon the contention that there should be a garage in this locality because there was none.

Under subdivision g of section 7 of the zoning resolution the board of appeals is authorized to "permit in a business or residence district the erection of a garage provided the petitioner files the consents duly acknowledged of the owners of 80 per cent. of the frontage deemed by the Board to be immediately affected by the proposed garage.  *  *  *."  Under this provision the board certifies that it fixed the limits of the property deemed to be affected.  While the return states that this action was taken at a meeting held January seventh there is nothing in the minutes to support this claim.  However, in a resolution later adopted by the board the area deemed affected is stated.  This area is the property on the west side of Ocean avenue to the north of the plot in question extending to Avenue H; also the property on the

southerly side of Avenue H westerly from Ocean
avenue extending to East Nineteenth street, and the
property on the easterly side of East Nineteenth
street extending from the southerly side of Avenue
H to the Long Island railroad cut; also the property
on the northerly side of Avenue H between the west-
erly side of Ocean avenue and the easterly side of
East Nineteenth street. The board excluded the prop-
erty on the easterly side of Ocean avenue directly
opposite the proposed site of the garage and also the
property on the same side of Ocean avenue as the pro-
posed site, situated south of the railroad cut. A read-
ing of the record indicates quite convincingly that the
property directly across Ocean avenue was deemed to
be not affected, because its ownership was in parties
whose consents could not be obtained. The suggestion
that the property might not be affected because there
was a parking in the center of Ocean avenue cannot
be seriously considered, for the board included the
property on the north side of Avenue H between
Ocean avenue and East Nineteenth street, although
there is a similar parking in the center of that avenue.
It appears, however, that the owner of that property
was in favor of the garage and so seemingly as his
consent could be obtained his property was deemed
by the board to be affected. This provision of the
resolution giving the board the power to determine
what property is immediately affected does not give
the board arbitrary power in that regard. It cannot
merely by its assertion determine that certain prop-
erty is affected and other property not affected when
the location and all the facts indicate otherwise. Of
course the property on the other side of Ocean avenue
directly opposite is necessarily affected. And so is
the property on the same side as the garage but south

of the cut, although that may be less affected. The property on the opposite side of Ocean avenue is much more affected certainly than the property on the north side of Avenue H, and particularly that property that is located on East Nineteenth street which is not even on the same street as the garage and has no view of it and is twice as far distant from it as the property on Ocean avenue opposite the proposed site. A reading of the record compels the conclusion that the board did not act in good faith in fixing the area deemed to be affected, and that its action in that regard was prompted solely by a desire to enable the applicant to secure enough consents to give the board the power to grant the permit under the provision mentioned.

But even with this district prescribed the applicant fell short of the necessary eighty per cent of consents and so the board included the frontage of the garage itself. And even with this the consents totaled only seventy-nine per cent. Clearly the board was in error in including the property in question as a part of that deemed to be affected. The resolution does not give the board this power. The property in question is not a part of that deemed affected. If it were the board could hold that was the only property affected and so decide that the consent of the applicant alone was sufficient. This would make the provision absurd, and no such meaning can be given to it. The property affected is the property in the immediate vicinity which is not to be used for the prohibited purpose. It does not include the property itself. The petition shows that the decision of the board in fixing the area of the property deemed to be affected was at variance with the board's general rules on this subject previously adopted by it. And this allegation is not

denied in the answer or return. What the general rules adopted by the board were does not appear in the petition and so the court cannot consider them. But the admitted fact that the board did not follow its own rules but instead made a special rule for this particular case lends emphasis to the other facts showing that the board did not act in accordance with law, but acted arbitrarily and without authority.

But the board contends it had the power to grant this application under section 20 of the zone regulations without regard to any consents. This section provides, " * * * Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this resolution the Board of Appeals shall have power in a specific case to vary any such provisions in harmony with its general purpose and intent so that the public health, safety and general welfare may be secured and substantial justice done. * * *" Apparently the board's contention is that this section gives them the power to do whatever they think is right regardless of the provisions of the statute. But it does not grant any such power. The board cannot wholly disregard the provisions of the statute or of the regulations. It can merely " vary " them to do " substantial justice " when the " strict letter " of the provisions would work hardships. The provisions of this section are almost identical with those of subdivision 5 of section 719 of the charter as added by chapter 503 of the Laws of 1916. And under that section it has been held that the board could not disregard the provisions of the statute. *People ex rel. Cockroft* v. *Miller,* 187 App. Div. 704. And the zoning resolutions have the force and effect of a statute. *Matter of Stubbe* v. *Adamson,* 220 N. Y. 459, 465. It may be that under section

20 the board could have granted the permit, although only seventy-nine per cent of the necessary consents were obtained, had the area fixed been proper. But here the board acted improperly in fixing the area of affected property and also in including the property itself.

There is nothing in conflict with this decision in *People ex rel. McAvoy* v. *Leo,* 109 Misc. Rep. 255. That application was not brought under subdivision g of section 7, but under subdivision e of that section. Subdivision e does not require any consents and so the language appearing in that case, to the effect that the board could grant the application sought " even though there had been no consents at all," had no reference to an application under subdivision g. Nor is there anything at variance between this decision and that in *People ex rel. Facey* v. *Leo,* 110 Misc. Rep. 516, for in that case it was held that the facts brought the application within the meaning of the provisions of subdivision a of section 7, if not strictly within its letter, and so it was held that the board had power under section 20. That did not involve a disregard of the direct provisions of the zoning regulations.

The writ should be sustained and the determination of the board annulled, and as the action of the board seems to have been in bad faith costs are allowed against the board.

Ordered accordingly.