People ex rel. Sheldon *v.* Board of Appeals. **449**

Misc.]                    Supreme Court, May, 1921.

The People ex rel. George R. Sheldon et al., Relators, *v.* The Board of Appeals of The City of New York, Constituted under Chapter XIV-A of The Greater New York Charter, as Amended, and John P. Leo, John J. Beatty, Alfred J. Boulton, William Crawford, John De Hart, James Kearney, and Fire Chief John Kenlon, the Members Thereof, Impleaded with William Waldorf Astor, Respondents, The Farmers' Loan and Trust Company, as Executors, etc., Intervenor, Respondent.

(Supreme Court, New York Special Term, May, 1921.)

Certiorari — when writ of, sustained — statutes — zoning regulation, city of New York — board of appeals.

The power to fix zones and create business and residence districts in the city of New York resides wholly in the board of estimate and apportionment except in so far as that body, under the statute (Laws of 1917, chap. 601, amending Laws of 1916, chap. 503, § 242(a)), may have delegated to the board of appeals the right to vary the application of the use district regulation adopted by the board of estimate and apportionment.

No zoning regulation adopted by the board of estimate and apportionment may in effect be repealed or set at naught by the action of the board of appeals taken in the guise of a variance.

The residential character of the properties on the east side of Madison avenue between Thirty-fifth and Thirty-sixth streets in the city of New York cannot but be appreciably lessened in desirability for residential purposes by the construction of a business building opposite them on the west side, and, the board of estimate and apportionment having placed such properties in a district restricted to residence use, the board of appeals, in granting a permit for the erection of a business building on the west side of said block under a resolution containing certain restrictions as to heighth, shape and architectural features, exceeds its power and a writ of certiorari to review such determination will be sustained.

29

CERTIORARI proceedings.

Carter, Ledyard & Milburn (Edmund L. Baylies and Edwin De T. Bechtel, of counsel), for relators.

John P. O'Brien (William T. Kennedy, of counsel), for Board of Appeals.

Cadwalader, Wickersham & Taft (Henry W. Taft, of counsel), for Farmers' Loan and Trust Company.

MULLAN, J. Certiorari, to review a determination of the board of appeals permitting the erection, partly in a business zone, and partly in a residence zone, of a proposed building of a business character. The power to fix the zones, and create the several use districts, resides wholly in the board of estimate and apportionment, except in so far as that body may, under the statute (Laws of 1917, chap. 601, amending § 242-a of chap. 503, Laws of 1916) have delegated to the board of appeals the right to vary the application of the use district regulations adopted by the board of estimate and apportionment. The board of estimate and apportionment placed the property on the easterly side of Madison avenue, between Thirty-fifth and Thirty-sixth streets, in a district restricted to residence use. It placed in the same use district the property on the westerly side of Madison avenue, between Thirty-fifth and Thirty-sixth streets, and running westwardly to a point 100 feet west of the westerly line of Madison avenue. It placed in a business use district the property adjoining, on the west, the last-mentioned property and running westwardly to a point beyond the westerly line of the property owned by Astor. Astor's plot is bounded on the east by the westerly line of Madison avenue, on the south by Thirty-fifth street, on the north by Thirty-sixth ·

street, and on the west by lines parallel with Madison
avenue and 245 feet (at Thirty-fifth street) and 220
feet (at Thirty-sixth street) westerly from the west-
erly line of Madison avenue. He applied to the super-
intendent of buildings for permission to erect a busi-
ness building covering that entire plot so owned by
him. Upon denial, he appealed to the board of appeals,
and that board made an order granting him the right
he sought, its resolution containing certain restric-
tions as to height, shape and architectural features
of the proposed building. The sole question before
me is whether the board of appeals, in allowing that
invasion of a residence district by a business use,
exceeded the powers delegated to it by the board of
estimate and apportionment. If it did exceed its
powers, its order is not sustainable. If it acted within
its powers, its action cannot be questioned. It is
wholly a question of jurisdiction. The original source
of the variance powers possessed by the board of
appeals is the statute of 1917, referred to. That
statute provided that the " regulations of the board
of estimate and apportionment may provide that the
board of appeals may determine and vary their appli-
cation in harmony with their general purpose and
intent and in accordance with general or specific rules
therein contained." Acting thereunder, the board of
estimate and apportionment, in 1917, by an amend-
ment to its zoning resolution of 1916, provided that
the board of appeals " may, in appropriate cases, after
public notice and hearing, and subject to appropriate
conditions and safeguards, determine and vary the
application of the use district regulations herein
established in harmony with their general purpose and
intent, as follows;" and then follow eight lettered
clauses or subdivisions, the only one of which that is
in point here being subdivision " c." That provision,

concededly controlling the decision here, reads in full: "Permit the extension of an existing or proposed building into a more restricted district under such conditions as will safeguard the character of the more restricted district." The relators are the owners of the residence properties situate on the east side of Madison avenue, opposite the Madison avenue side of the proposed business building in question, and numerous other owners of residence properties in the same residence use district. It is their contention that what the board of appeals has construed as a variance is, in fact, an amendment or substitution; and their argument seems to me to be unanswerable. For reasons that may have been good or bad, but, in any case, with which a court may not concern itself, the board of estimate and apportionment placed the Madison avenue front at the point in question in a residence zone. Concededly, of course, as between a residence zone, and a zone of the least objectionable business use, the former is the "more restricted." The plain intent and purpose both of the legislature and the board of estimate and apportionment, seems to me to have been merely to permit of the *amelioration* of the rigors of necessarily general zoning regulations by eliminating the necessity for a slavish adherence to the precise letter of a regulation where, in a given case, little or no good on the one side, and undue hardship on the other, would result from a literal enforcement. It would be difficult, as well as unprofitable, to lay down any precise limits to the powers conferred under subdivision " c." But it is quite safe to say that no zoning regulation adopted by the board of estimate and apportionment may in effect be repealed or set at naught by the board of appeals by action taken in the guise of a variance. Was this, then, a variance? We are dealing with a subject that requires

no special knowledge. Every one must know that the residential character of the properties on the east side of Madison avenue cannot but be appreciably lessened, in desirability for residential purposes by the construction of a business building opposite them, on the west side. And so, too, though in lesser degree, must all the residential properties in that residential use district be unfavorably affected by the conversion of the west side of Madison avenue from a residence to a business district. Indeed, it appears to me to be so plain that the so-called variance is not a variance at all, but an amendment that only the board of estimate and apportionment itself has the power to make, as to make it unnecessary to state reasons that must suggest themselves to any one who gives the matter the slightest thought. I shall not refer in detail to the restricting conditions imposed by the board of appeals in respect of the size and other features of the proposed building; but shall let it suffice to say that in my opinion those restrictions, and probably any conceivable restrictions as to a building devoted to a mercantile business use, are wholly inadequate to preserve and safeguard the character of the residence use district as it was created by the board of estimate and apportionment. I hold that the change permitted by the board of appeals is fundamental in character, that it goes beyond the limit of that board's power, and that the board was, therefore, without jurisdiction. The writ is sustained.

Writ sustained.