VAN METER et al. v. H. F. WILCOX OIL & GAS CO. et al.

No. 24990.    Feb. 26, 1935.

Harlan T. Deupree, for plaintiff in error J. W. Van Meter.

Ames, Cochran, Ames & Monnet, for plaintiffs in error Harrison Smith and Anderson & Kerr.

Floyd C. Dooley, for plaintiff in error Denver Producing & Refining Company.

Twyford & Smith, for defendants in error H. F. Wilcox Oil & Gas Company and A. J. Diffie, Inc.

Pierce, McClelland, Kneeland & Bailey, for defendant in error Terminal Oil Company.

McNEILL, C. J. This action involves an application for a permit to locate, drill, and operate a second oil and gas well on an un-platted tract of land comprising 5.5 acres located within the U-7 oil and gas drilling zone of Oklahoma City.

Pursuant to chapter 178, Session Laws of Oklahoma, 1923 (secs. 6170-6179, O. S. 1931), the governing body of said city enacted a comprehensive zoning ordinance, designed for the betterment, safety, health, and general welfare of its people. This zoning ordinance divided the city into several zoning districts, and by subsequent amendment, the U-7 oil and gas district was established.

Among other things, said ordinance provides that no oil and gas well shall be drilled within the corporate limits of said city except within the limits of said U-7 district, and also provides for the issuance of a permit by the superintendent of buildings. In the event that any party may be affected by the order of the superintendent of buildings, the right to appeal is granted to the board of adjustment, and from that board to the district court, where the matter is tried de novo. An appeal may be taken from the judgment of the district court to the Supreme Court of Oklahoma.

It appears that the defendant in error A. J. Diffie, Inc., heretofore was granted a permit to drill an oil and gas well on the unplatted tract of land in question, comprising 5.5 acres, known as the Terminal Oil Mill tract, at the point or location requested by said defendant in error. This permit was granted by the board of adjustment on May 18, 1931, and an appeal was thereafter lodged in the district court and judgment rendered by said court, on January 21, 1932, sustaining the granting of said permit.

While said matter was pending on appeal before the district court, said A. J. Diffie, Inc., in conjunction with the H. F. Wilcox Oil & Gas Company proceeded to drill and complete said well on July 18, 1931. The Denver Producing & Refining Company, one of the plaintiffs in error, completed drilling two wells, King No. 1 and King No. 2, on June 19, 1931, and on September 16, 1931, respectively, on its tract of unplatted land containing 10.8 acres which adjoined the tract of land in question on the north. The Slick-Curtis well to the east and north of the Terminal Oil Mill tract was brought in as a producer on August 19, 1931. This well was located on a tract of 4.11 acres. The Slick Company and associates also brought in two wells, known as Terminal Oil Mill Co. No. 4 and Terminal Oil Mill No. 5, to the south and west of the tract

on which the Diffie well was drilled. These Terminal wells were located on two tracts of unplatted land, each of which contained not less than five acres. The Anderson-Kerr, Inc., brought in a well to the south and west of the tract of the Terminal Oil Mill Company on an unplatted tract of land comprising 3.7 acres. About the time the Diffie well was completed, the H. F. Wilcox Oil & Gas Company and A. J. Diffie, Inc., defendants in error, filed their joint application for permission to drill a second well on said Terminal Oil Mill tract, being the permit involved herein, contending as grounds for said application that there were two offset oil and gas producing wells to said tract, one to the north and the other to the south thereof, both of which wells were draining the oil and gas therefrom. The Terminal Oil Mill Company, the owner in fee of the tract in question, joined in this application.

The building superintendent denied the joint application. The matter was appealed to the board of adjustment, and on September 26, 1932, after a hearing, the board of adjustment refused to grant said permit, finding as follows:

"The board further finds that the drilling of more than one well upon the block herein described would be inequitable and would not be within the intent and purpose of the ordinances of said city and would be contrary to the public interests, and would also work an unnecessary hardship upon adjacent property owners and upon the property owners within said block described herein, for the reason that one well upon said block will completely and adequately drain the oil and/or gas from under the same in an equitable manner. * * *

"7. That the tract of land upon which applicants ask to drill a second well for oil and/or gas purposes does not contain a fractional part, in addition to its 5 acres, of an area of not less than 2½ acres, but contains in all only 5.5 acres, and under the terms of said ordinances, but one well can be drilled upon said tract of land above described.

"8. That from the nature of the area in which said first well of applicants is located, and the drilling 'blocks' heretofore created and granted by the board of adjustment on adjacent tracts of land to other persons, firms, and corporations, the granting of a permit to applicants to drill a second well upon said five-acre tract would result in unjust financial loss, unnecessary hardship on others, and would be in violation of the letter and the spirit of the ordinance and unjust and inequitable toward surrounding property owners.

"9. That there should be no special exception to the terms of the city ordinances granted in favor of said application, as no facts have been shown that would justify same. Therefore said application should be, and hereby is denied."

An appeal was lodged from this order and judgment before the district court of Oklahoma county. On February 23, 1933, the district court of said county found in favor of the plaintiffs, H. F. Wilcox Oil & Gas Company and A. J. Diffie, Inc., and found that a permit should be granted to them to drill this second well as prayed for in their application, and decreed in part as follows:

"It is therefore considered, ordered, adjudged and decreed that the judgment and order of the adjustment board be and the same is hereby reversed and the plaintiff, H. F. Wilcox Oil & Gas Company, a corporation, its successors and assigns, are hereby granted a permit to drill an oil and gas well at the location set forth in the application on file herein and the provisions of the ordinance in respect thereto are varied to that extent and an exception is made to the ordinance to that extent in order that substantial justice may be done and the variance and exception will not be against the public interest, said well to be located at the point and place specified in plaintiffs' application, the same being the second well to be drilled upon the property upon which the plaintiff holds a leasehold estate, and said property to be embraced within this permit for the drilling of said well is situated in Oklahoma county, state of Oklahoma."

The oil companies, Denver Producing & Refining Company, the Southwestern Cotton Oil Company, Anderson-Kerr, Harrison M. Smith, and also J. W. Van Meter, superintendent of buildings of the Oklahoma City, plaintiffs in error, protested to the granting of said permit to drill said second well.

A copy of a map attached to the brief of the Denver Producing & Refining Company is set forth.

This map shows the various areas to which we have referred, their respective shapes and dimensions and the locations of the different wells, their respective distances from each other and between various points and lines of the land, the U-7 zone boundaries to the north and west, and the 300-foot drilling limits from the same, which area constitutes a buffer or nondrilling area.

As grounds for reversal, plaintiffs in error, in part and in substance, urge as follows:

(1) That the district court erred in granting the application to drill a well upon the tract in question, for the reason that all of the real estate had been previously included in a drilling block for a well which had been drilled thereon, and which drilling block was not sufficiently large to authorize the drilling of a second well under the ordinances of said city.

(2) That said applicants were not entitled to this second permit, as all of the territory embraced within their application

upon which a second well could be drilled had been included within another drilling area.

(3) A permit having been granted on all territory embraced within the application of said applicants, a second permit should not be granted, relying on that same territory to make up its acreage, as long as the first permit stood unrevoked, and that order granting the first permit could not be attacked in a collateral proceeding.

(4) That the court was without jurisdiction to enter an order granting a permit to the applicants.

On the other hand, the applicants, the defendants in error, contend as follows:

(1) That the judgment is supported by sufficient legal evidence, and is such a judgment as the district court had a right to render under the statutes and under the ordinances passed pursuant to the statutes.

(2) The provisions of the ordinance limited the drilling of a well to a block of

two and one-half acres of platted tracts and one well to five acres of unplatted tracts, all within the same class of territory, is discriminatory and not within the police power of the city to pass, and is therefore void.

(3) Subdivisions B, C and D of section 2 of the ordinance in question are so indefinite and uncertain that the same are not susceptible of understanding and uniform enforcement.

Chapter 178 of the 1923 Session Laws authorizes the creation of zoning districts in cities. These provisions are embraced in sections 6170 to 6179, both inclusive, of the Oklahoma Statutes, 1931. Section 6170 in part empowers the governing bodies of cities to regulate and restrict the location and use of buildings, structures, and land for trade, industry, residence, or other purposes in order to promote the health, safety, morals, or the general welfare of the community. Section 6171 authorizes the division of the municipality into districts. Section 6172 authorizes that the regulations and restrictions "shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provisions of transportation, water, sewerage, schools, parks, and other public requirements."

Section 6175 provides for the appointment of a zoning commission "to recommend the boundaries of the various original districts and to recommend appropriate regulations to be enforced therein."

Section 6176 empowers the governing body of said city to provide for the appointment of a board of adjustment to consist of five members. Under said section the board of adjustment shall have the following powers:

"(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this act or of any ordinance adopted pursuant thereto.

"(2) To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance.

"(3) To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unneces-

sary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

"In exercising the above mentioned powers such board may, in conformity with the provisions of this act, reverse or affirm, wholly or partly or may modify the order, requirement, decision or determination appealed from and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken."

The city of Oklahoma City, pursuant to said Act of 1923, shortly thereafter enacted a general zoning ordinance whereby the city was zoned into various use-districts, as, to wit, residence, apartment, retail business, etc. Sometime after the discovery of the tremendously prolific oil and gas field to the southeast of said city, with wells producing many thousands of barrels of oil and many millions of feet of gas per well per day, the U-7 zone was created by the city council of said city, which granted the right to drill an oil and gas well within said U-7 district under minute detailed regulations and restrictions set forth in said ordinance No. 3944, which was passed by the city council of said city and approved by said mayor of said city under date of July 3, 1930. The ordinance creating this zone has been amended at different times, and the applicable provisions in question in part are as follows:

"C. In unplatted tracts no well shall be drilled or put down upon any block or tract of less than 5 acres in area, and in platted tracts no such well shall be drilled or put down upon any block of less than 2½ acres in area, except as otherwise provided. Before a permit shall be granted upon any platted block, or unplatted tract of land which is adjoining, or contiguous to any unplatted tract of less than 5 acres of any platted block of less than 2½ acres in area, upon application of any owner, lessee or other interested person, firm or corporation in said unplatted tract of less than 5 acres or platted block of less than 2½ acres, or in any adjoining or contiguous unplatted tracts or platted blocks aforesaid, the board of adjustment shall upon giving notice and holding a hearing in the same manner as is provided for appeals from the building superintendent, attach said unplatted tract of less than 5 acres or platted blocks of less than 2½ acres, in whole or in part to such contiguous or adjoining unplatted tract or tracts or platted block or blocks for the purpose of permitting a well to be drilled in which said unplatted tract of less than 5 acres or platted block of less than 2½ acres, may participate. The said board of

adjustment shall provide the pro rata or ratable basis, on which the said unplatted tract of less than 5 acres or platted block of less than 2½ acres shall participate in said well or wells, and in addition thereto shall make any equitable order in relation thereto which may be proper in order that substantial justice may be done. Any interested party affected by said order may appeal to the district court provided by law."

Paragraph D of section 2 of said ordinance provides as follows:

"If any block be more than five acres in area, one such well may be drilled upon each contiguous five-acre unit within said block, and one additional well may be drilled upon the fractional part thereof remaining after deduction of such five-acre tract or tracts aforesaid, providing, however, that such fractional part is of any area of not less than two and one-half acres, except as otherwise provided; provided, however, that no part of any territory included within any five-acre unit upon which a permit \is granted, shall be used or included in any manner with any other territory or area for the purpose of obtaining any other or additional permit for the drilling of a well."

The board of adjustment has the power and authority to decide special exceptions and to authorize, in specific cases, variances from the terms of the ordinance, when not contrary to the public interest, so long as the general intent, spirit, and purpose of the ordinance is observed, in order that the literal enforcement of its provisions will not result in unnecessary hardships. These statutory conditions were reviewed in Anderson-Kerr, Inc., v. Van Meter, 162 Okla. 176, 19 P. (2d) 1068. Even though the board of adjustment is empowered to make the exceptions and variances referred to in the statute, yet it must not be forgotten that these special exceptions or variances should be granted under special conditions arising in each particular case so as to prevent unnecessary hardship which would inevitably result in the event of the literal enforcement of the provisions of the ordinance, and that they must be harmonized with the general intent, design, and purpose of the ordinance. The board of adjustment cannot have unconfined and unrestrained freedom of action. It is not at liberty to depart from the comprehensive plan embodied in the ordinance, and it cannot, under the guise of exceptions and variances, modify, amend, repeal, or nullify the ordinance by establishing new zone lines and creating different areas for the drilling of oil and gas wells and thereby essentially change and substantially derogate the fund-amental character, intent, and true purpose of the zoning law. Its power of review in granting variations and exceptions is limited to adjusting practical difficulties and unusual emergencies which may arise in a particular case when the strict enforcement of the provisions of the ordinance would constitute an unnecessary hardship. State ex rel. Tingley v. Gurda (Wis.) 243 N. W. 317; State ex rel. Nigro v. Kansas City, 325 Mo. 95, 27 S. W. (2d) 1030. In short, the board is refinedly limited in its statutory authority and assumption of power, and this limitation should not be lightly abused. It is largely and almost solely by virtue of this power and authority, which has been vested in such administrative boards with right of appeal therefrom to the district court, where the matter is tried de novo, that the constitutionality of zoning legislation has been upheld. See the Law of Zoning by Metzenbaum, pages 248 and 261.

In considering the basic foundation of zoning ordinance enacted in the proper exercise of police power, financial loss to an individual, firm, or corporation affords no adequate ground for impeding or standing in the way of the general good and promotion of the public welfare. Hadacheck v. Sebastian, 239 U. S. 394, 36 P. 143, 60 L. Ed. 348; Ex parte Hadacheck, 165 Cal. 416, 132 P. 584. In such cases the object and intent of a zoning ordinance should not be suspended solely for the special benefit of an individual by reason of financial gain or loss, but on the contrary all property so restricted must yield to the burden, intent, and spirit of a comprehensive zoning ordinance designed to be essentially reasonable and necessary in the interest of the common welfare of those residing within the municipality, providing always that proper exceptions and defined limitations may come within the purview of the board of adjustment.

The findings of the board or the district court on appeal, where based upon categorical provisions, "contrary to public interest," "unnecessary hardship," and "substantial justice," should be fully substantiated by facts, and said board or court should fully set forth the facts, the grounds, and reasons for its decision.

In the case of Heffernan v. Zoning Board of Review (R. I.) 144 Atl. 674, it was said:

"The expressions 'contrary to the public interest' and 'unnecessary hardship' must be given a reasonable interpretation. As the provisions of the ordinance represent a declaration of public interest, any variance

would in some measure be contrary thereto. In this connection, the words 'contrary to the public interest' should be interpreted to mean what in the judgment of a reasonable man would unduly and in a marked degree conflict with the ordinance provisions. As to the words 'unnecessary hardship' it may be said that each of the restrictions of the ordinance upon what would otherwise be a lawful use of one's property might be termed a 'hardship' to the owner. We regard the term 'hardship,' as used in the ordinance, to have some reference to the degree of the interference with ordinary legal property rights, and to the loss of hardship which would arise therefrom. We think the expression should be interpreted to refer to a 'hardship' peculiar to the situation of the applicant, which is of such a degree of severity that its imposition is not necessary to carry out the spirit of the ordinance and amounts to a substantial and unnecessary injustice to the applicant. * * *

"The zoning board of review is without power to nullify the ordinance under the guise of 'variances.' The board cannot vary the ordinance save in accordance with the provisions giving it such discretionary power. * * *"

In the case of People ex rel. Cotton v. Leo, 180 N. Y. S. 554, it was also said:

"Apparently the board's contention is that this section gives them the power to do whatever they think is right, regardless of the provisions of the statute. But it does not grant any such power. The board cannot wholly disregard the provisions of the statute or of the regulations. It can merely 'vary' them to do 'substantial justice,' when the 'strict letter' of the provisions would work hardships. The provisions of this section are almost identical with those of subdivision 5 of section 719 of the charter, as added by chapter 503 of the Laws of 1916; and under that section it has been held that the board could not disregard the provisions of the statute. People ex rel. Cockcroft v. Miller, 187 App. Div. 704, 176 N. Y. Supp. 206. And the zoning resolutions have the force and effect of a statute. Matter of Stubbe v. Adamson, 220 N. Y. 459, 465, 116 N. E. 372."

See, also, Hammond v. Board of Appeal, 257 Mass. 446, 154 N. E. 82; Bradley v. Board, 255 Mass. 160 and 177, 150 N. E. 892; Prusik v. Board of Appeal of Bldg. Dept. of Boston, 262 Mass. 451, 160 N. E. 312; People ex rel. Smith v. Walsh, 240 N. Y. 606, 148 N. E. 724; Id., 211 App Div. 205, 207 N. Y. S. 324; 4672 Broadway Corp. v. Board of Standards and Appeals, 250 N. Y. 571, 166 N. E. 328; Id., 225 App. Div. 97, 232 N. Y. S. 266; Stevens et al. v. Clarke et

al., 216 App. Div. 351, 215 N. Y. S. 190; People ex rel. Stevens v. Clark, 126 Misc. 549, 213 N. Y. S. 350; Pounds v. Board of Standard & Appeals of City of New York, 248 N. Y. 591, 162 N. E. 537; Id., 223 App. Div. 861, 228 N. Y. S. 879; People ex rel. Sheldon et al. v. Board of Appeals, 115 Misc. 449, 189 N. Y. S. 772; Norcross et al. v. Board of Appeals, 255 Mass. 177, 150 N. E. 887.

A strong line of reasoning for regulating the drilling of oil and gas wells in a city in an effort to safeguard the public welfare is set forth in an opinion by Circuit Judge McDermott, at the time he was United States District Judge, in the case of Marrs v. City of Oxford, 24 F. (2d) 541. The ordinance of the city of Oxford dealt with the regulations of town lot drilling, and provided that no more than one well should be drilled to a block. In this opinion Judge McDermott very aptly and vividly described the conditions surrounding the drilling of an oil and gas well within the limits of a city and succinctly states that the power to impose such regulations is scarcely deniable under the definition of police power and the right of the city authorities to regulate such industry in an orderly way. In that case Judge McDermott said:

"A dozen drilling rigs in a city block more than multiplies the danger from fire and wind, and the necessary inconveniences and discomforts to the residents; it exactly multiplies the wear and tear on city streets, always abused by the necessary hauling of rig timbers, bull wheels and casings. Moreover, it is practically impossible for each landowner to get his proper share of the oil or gas. If every lot owner leased on the same day, and every well was spudded in at the same instant, the sand would not be reached the same day. The frailty of men and machinery results in lost tools, parted casings, crooked holes, disabled power; the result is that some fortunate owner gets the flush production from his own and all his neighbors' land. Moreover, there is always a chance that oil companies will sometime decline to drill on isolated lots, or in incomplete blocks and this would enable one owner to squeeze the owner of an isolated lot from any participation in his own oil, or enable a stubborn owner to prevent any drilling in the block. Town lot drilling is a menace to the community and an economic waste to the landowner, the oil operator, and the public. * * * If the city authorities wanted the oil recovered in an orderly way, with one well to the block, so that the operations could be carried on within control of its police and fire protection facilities, with as little inconvenience to its citizens as possible, and so that there

would be a minimum of scars left when the pool was drained, its power to take some steps toward that end can scarcely be denied."

This case was affirmed by the Circuit Court of Appeals, Eighth Circuit, 32 F. (2d) 134, in an opinion written by Judge Lewis. In that case it was said:

"* * * An oil pool had been discovered, which extended under the city on its westerly side, and it was reasonably anticipated that leases of city lots would be sought on which to drill wells for oil and gas and operate them if the minerals should be found— hence, the passage of the ordinance, its predominant purpose being to prevent more than one well in each city block. A great many leases have been given and many wells are being drilled within the city. * * *

"Notwithstanding the allegations of the bill, it seems undeniable to us that when work of this kind under consideration is carried on in residential or business sections of a town or city without some limit to the number of wells in a given area, they will necessarily become nuisances of a most aggravated sort to its inhabitants and its business interests. There will be annoyance from unsightly structure, disquieting noises of machinery, the immediate and constant presence of numbers of workmen and the persistent thought of impending danger from explosion and conflagration because of the highly inflammable nature of the product. Such a situation calls for some governmental restriction and control. The greater the number of wells in a city block the greater will be the annoyance and hazards to the public. Indeed, it would be hard to say that an ordinance prohibiting the drilling and operation of any well within the business or residential districts of a city would be an unreasonable and invalid exercise of the police power. We do not doubt the validity of the ordinance here challenged. Its requirements and regulations are in protection to the public welfare, effective if enforced to accomplish that purpose and the passage and adoption of it cannot in our judgment be justly said to be an arbitrary and unreasonable exercise of the city's power. This is enough to dispose of the appeal."

It is no longer open to doubt that a city has the authority to regulate the drilling of oil wells within its corporate limits. See Herkness v. Irion, 11 F. (2d) 386; Winkler v. Anderson (Kan.) 177 P. 521, 3 A. L. R. 268; Oxford Oil Co. v. Atlantic Oil & Producing Co., 16 F. (2d) 639; affirmed in 22 F. (2d) 597; Marrs v. City of Oxford, 24 F. (2d) 541; affirmed in 32 F. (2d) 134; Ohio Oil Co. v. Indiana, 20 S. Ct. Rep. 576, 177 U. S. 190; C. C. Julian Oil & Royalties Co. v. Capshaw, 145 Okla. 237, 292 P. 841; Champlin Ref. Co. v. Corporation Commission of Oklahoma, 51 F. (2d) 823; affirmed, 52 Sup. Ct. Rep. 559, 286 U. S. 210; Marblehead Land Co. v. City of Los Angeles, 36 F. (2d) 242; affirmed, 47 F. (2d) 528; Helmerich & Payne v. Roxanna Petroleum Corp. (Kan.) 14 P. (2d) 663; Bandini Petroleum Co. v. Superior Ct., 52 Sup. Ct. Rep. 103.

Counsel for the Wilcox Oil & Gas Company and A. J. Diffie, Inc., urge that subdivisions B, C, and D of section 2 of the ordinance are so indefinite and uncertain that the same are not susceptible of understanding and uniform enforcement and that the provision of the ordinance limiting the drilling of a well to a block of $2\frac{1}{2}$ acres of platted tract and one well to five acres of unplatted tract, all within the same class of territory, is discriminatory and not within the police power of the city to pass, and is therefore void. We do not think this contention is sound. Gant v. Oklahoma City, 150 Okla. 86, 6 P. (2d) 1065; Gant et al. v. Oklahoma City, 160 Okla. 62, 15 P. (2d) 833; affirmed in 289 U. S. 98; Morgan Pet. Co. v. Oklahoma City, 167 Okla. 632, 31 P. (2d) 594; Courter Oil Co. v. Oklahoma City, 167 Okla. 633, 31 P. (2d) 596.

In the case of Prusik v. Board of Appeals (Mass.) 160 N. E. 312, the Supreme Court of Massachusetts said:

"It is manifest from the general purpose underlying any zoning act, as well as from the provisions of said section 19, that the power to vary the application of the act is to be exercised sparingly. Exceptional circumstances alone justify relaxation in peculiar cases of the restrictions imposed by the statute. The dominant design of any zoning act is to promote the general welfare. The protection of health and the promotion of safety are salient factors. The stability of the neighborhood and the protection of property of others in the vicinity are important considerations. The financial situation or pecuniary hardship of a single owner affords no adequate ground for putting forth this extraordinary power affecting other property owners as well as the public."

We consider the question of unnecessary hardship.

The Denver Producing & Refining Company has drilled two wells on its unplatted tract of 10.87 acres; the Slick Curtis, one well on its 4.117 acre tract; the Slick Terminal, two wells on two contiguous unplatted tracts of 5 acres each; and the Anderson-Kerr Harrison Smith, one well on

its unplatted tract of 3.7 acres. It is seen that the acreage of each of the drillers of wells is approximately the same. As to the potentials, the evidence shows the number of barrels of oil per day as follows: Denver Producing & Refining Company King No. 1, 12,759; Wilcox-Diffie No. 1, 11,461; Slick Curtis, 16,306; Denver Producing & Refining King No. 2, 13,089; Slick Terminal No. 5, 8,914; Anderson-Kerr Harrison Smith, 14,523. By reference to the map it is to be observed that the proposed location is within the drilling limits and located between Denver Producing & Refining Company King No. 2 and Anderson-Kerr Harrison Smith No. 1. The evidence shows that all of these wells produce from the common pool, and it is apparent that the Wilcox-Diffie No. 1 well drains from the adjoining tracts of land.

The evidence shows that the Anderson-Kerr tract, consisting of 3.7 acres, was not made into a drilling block nor a permit granted to drill on the same until after permits had been secured to drill on all the adjacent tracts, including the tract in question. When the Anderson-Kerr tract was created, applicants herein did not seek to have any of the portion of their tract annexed to the Anderson-Kerr tract. On the contrary, they have sought to avoid the ordinances through the channel of special exceptions.

It seems that the predominant purpose of the ordinance in question was to restrict, regulate, and prevent the drilling of more than one oil and gas well to an unplatted tract of approximately five acres in area.

If the permit was granted to the applicants to drill an additional well on the theory that their land was being drained of oil and gas, it would be essentially and fundamentally inconsistent with and override the general plan and scope of the drilling ordinance. Instead of placing a limitation on the number of wells to an unplatted tract, it would stimulate the granting of permits for a multiplicity of wells on adjacent tracts and result in conditions analogous to town lot drilling, which was so accurately described by Judge McDermott in the case of Marrs v. City of Oxford, supra. All the wells in this drilling area are producing from a common pool and the same source of supply, and another well on this tract in question would permit applicants to share a greater percentage of the recoverable oil to the detriment of others and would result in financial loss to adjacent owners who have complied with and acquiesced in the provisions of the ordinance. Every additional well permitted to be drilled within the drilling area to that extent, at least, proportionately increases the hazards to life and property.

Applicants selected their own location on the east side of their block and now, after the other blocks have been created, and without making any application to have the western portion of their block attached to the Anderson-Kerr tract of 3.7 acres, so as to share in any oil that might be drained therefrom, they now seek to drill a well on the west end of their block at a location near the nondrilling zone, which would permit them to have two holes in the common pool to one of their competitors, whereby said second well would drain from the nondrilling zone area, the Anderson-Kerr tract, and the Terminal tract, respectively.

We conclude that the facts do not justify that special exceptions should be granted to the terms of the ordinance in this special instance, and that no unnecessary hardship or denial of substantial justice will result in the denial of the permit to drill an additional well on the tract in question.

Judgment of the district court is reversed, and cause is remanded, with directions to deny the permit.

OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, and GIBSON, JJ., concur. WELCH and PHELPS, JJ., dissent. CORN, J., absent.