Mr. and Mrs. Harold E. GLASER, Plaintiffs in Error,

v.

TULSA METROPOLITAN AREA PLANNING COMMISSION, Defendant in Error.

No. 38799.

Supreme Court of Oklahoma.

Feb. 28, 1961.

**248**

Clarence E. Nichelson, Tulsa, for plaintiffs in error.

Robert D. Simms, County Atty. of Tulsa County, Donald D. Cameron, Asst. County Atty., Tulsa, for defendant in error.

JACKSON, Justice.

This is an appeal by Mr. and Mrs. Harold E. Glaser from a judgment of the District Court of Tulsa County, Oklahoma, sustaining the action of the Tulsa Metropolitan Area Planning Commission in approving a subdivision plat of the Rondo Valley Addition.

Plaintiffs are the owners of a five-acre tract of land north of and contiguous to the twenty-acre Rondo Valley Addition, which is owned by Chandler-Frates Company. Both tracts face east on Lewis Avenue, a main thoroughfare running north and south. The south line of the Glaser tract, which is the north line of the Rondo Valley Addition, is the first quarter-section line south of 51st Street, a main thorough-fare running east and west. There are no streets extending west from Lewis Avenue between 51st Street and the south line of the Rondo Valley Addition, although 53rd Street extends to Lewis Avenue from the east, and is in line with the property line between the Glaser tract and the Rondo Valley Addition.

The subdivision plat which was approved by the defendant planning commission does not provide for an extension of 53rd Street to the west, as desired by plaintiffs in error, but provides for the opening of 55th Street from Lewis Avenue running west along the south line of the Rondo Valley Addition, with four intersecting north-south streets into the Rondo Valley Addition. Three of the north-south streets extend through the subdivision to the south line of the Glaser tract, but there are no existing streets extending north of the Rondo subdivision. The land to the north and west of the Rondo Valley Addition, including the Glaser tract, is unplatted.

In 1956, Chandler-Frates Company submitted a preliminary plat of the proposed subdivision, which provided for the opening of 53rd Street west from Lewis Avenue along the property line between the Glaser tract and the Rondo Valley Addition. That plat was disapproved upon recommendation of the commission staff and engineers, and on September 17, 1958, the plat of which plaintiffs now complain was approved. Upon learning of the approval of the plat, plaintiffs obtained a hearing before the planning commission and protested but the commission refused to vacate the plat or reconsider their approval of same. The district court sustained the action of the plannning commission, from which order and judgment plaintiffs appeal.

Plaintiffs contend that the subdivision plat of the Rondo Valley Addition, as approved by the planning commission, closes in their property, denies their right of access to a main thoroughfare, and constitutes a public nuisance. That as a result, they are precluded from subdividing and developing their property to its maximum value, being limited to tieing in their

tract with the streets provided in the Rondo Valley Addition plat. It is further contended that inconvenience and hardship will result to future residents of the Glaser property, including school children, as a result of their having to travel south through the Rondo Valley Addition to 55th Street in order to reach Lewis Avenue and go back north to 51st Street.

The Tulsa Metropolitan Area Planning Commission was created under the provisions of Title 19 O.S.Supp.1955, § 863.1 et seq., for the purpose of bringing about a coordinated physical development in accordance with the present and future needs of the city and a five-mile perimeter area. The commission is empowered and directed to make and adopt a master plan to promote the health, safety, convenience, prosperity, and general welfare of the people of the metropolitan area and the State of Oklahoma. The commission is given general zoning powers, and the power to approve subdivision plats, without which approval the filing of a plat shall be void.

Section 863.9, provides:

"Such Commission shall adopt rules and regulations of uniform application governing plats and subdivisions of land falling within its jurisdiction. Such regulations shall be designed to secure and provide for the proper arrangement of streets or other highways in relation to the existing or planned streets or highways or to the master plan or plans of the area; for adequate and convenient open spaces for traffic, utilities, access of fire-fighting apparatus, parking lots, parks, playgrounds, light and air; and for the avoidance of congestion of population. * * *"

Pursuant to the foregoing section, the Tulsa Metropolitan Area Planning Commission adopted "Subdivision Regulations", the pertinent provisions of which are, as follows:

"Sec. VII. Design Standards:

"1. Street plan and relation to adjoining street system.

"(c) The proposed street layout should be appropriate for the particular type of development proposed and effectively related to the proper street system and development of the surrounding area.

"(d) Whenever practicable, there should be a minimum of 600 feet between street intersections involving any major highway established by the Master Plan of the Tulsa Metropolitan Area.

"(e) Streets intersecting with major highways preferably should be those streets which serve to collect or distribute traffic in the neighborhood or surrounding area by carrying such traffic to or from the major highway.

"2. Access.

"(b) The subdividing of land shall provide each lot access to a public street or highway so that the convenience of the lot owner or user is assured, as well as the layout of utilities, garbage and waste removal, fire protection, and public health and safety thereby adequately provided for.

\* \* \* \* \* \*

"6. Culs-de-sac and dead end streets

"(a) Culs-de-sac and dead end streets shall be avoided except in cases where unusual topographic conditions may make such streets advisable. In such cases the Planning Commission may modify this restriction and the following provisions shall apply:

"(1) Maximum length of 400 feet.

\* \* \* \* \* \*

"9. Street grades.

"(a) Street grades shall conform to the requirements of the City Engineer for subdivision plats requiring the approval of that Office, and to the requirements of the County Engineer for subdivision plats requiring the approval of that Office. In the absence of any such requirements, the following minimum standards should be observed.

"(1) Street grades for major streets and highways should not exceed 5 per cent.

"(2) Street grades for all other classes of streets and highways should not exceed 8 per cent.

"(3) The Planning Commission may permit variation from these grades where it deems modification advisable in order to adjust to topographic conditions.

\* \* \* \* \* \*

"Sec. IX. Variances. Where in the case of a particular proposed subdivision, it can be shown that strict compliance with the requirements of these subdivision regulations would result in extraordinary hardship to the subdivider because of unusual topography, or other such not self-inflicted conditions, or that these conditions would result in inhibiting the achievement of the objectives of these regulations, the Planning Commission may vary, modify, or waive the requirements so that substantial justice may be done and the public interest secured; provided, that any such variance, modification, or waiver will not have the effect of nullifying the intent and purpose of these subdivision regulations and the Master Plan for the Tulsa Metropolitan Area."

Title 19 O.S.Supp.1959 § 863.22 provides as follows:

"A judicial review in the District Court may be had of any ruling, regulation, interpretation, order, requirement, refusal, permit, approval, or decision made under the terms of this Act, when such action is alleged to be arbitrary, unreasonable or capricious, and that by reason thereof such action has worked or, if enforced, will work an unnecessary hardship on or create substantial harm or loss to the complaining party."

The question for our determination, then, is whether the approval of the Rondo Valley Addition subdivision plat by the planning commission was arbitrary, unreasonable or capricious, and has worked or will work an unnecessary hardship on or create substantial harm or loss to plaintiffs. It is not the function of the courts to substitute their judgment for the judgment of duly-constituted municipal legislative authorities. City of Healdton v. Beall, Okl., 341 P.2d 583.

The action of the planning commission in refusing to approve the first preliminary plat of Rondo Valley Addition, which provided for an extension of 53rd Street from Lewis Avenue was based on two considerations: First, the extension of 53rd Street west from Lewis and between the Glaser tract and the Rondo Addition would result in a grade at the intersection in excess of 8 per cent, the maximum grade permitted by the "Subdivision Regulations" for secondary streets, thus creating a hazardous intersection; and, second, the extension of said street would result in excessive through traffic in a residential area contrary to modern planning concepts.

Mr. Neal Walton, Chief of Planning Administration for the commission, testified, in part, as follows:

"The Court: Well, apparently the argument here is these people who are appealing think that Fifty-third Street should be opened up through here.

"The Witness: Yes, that's the whole argument, that's right.

\* \* \* \* \* \*

"The Court: Why do you as an expert tell me that is not feasible or a proper thing?

"The Witness: This is primarily based on the advice of our Technical Committee which is made up of the City and County Engineer and Traffic Engineer and has to do with this gradient at the intersection. As Mr. Miller pointed out, the regulations called for not more than eight percent on interior streets such as these would be. The gradient on Lewis Avenue and at the intersection of any street entering Lewis Avenue should be held to a maximum of four percent for a distance of

some hundred feet east or west of the center line, so that there is a fairly flat entry onto the major street from either side, and then the gradient from that point back would be required to be held to a (maximum) of eight percent.

\*　　\*　　\*　　\*　　\*　　\*

"The Court: Now, what is the situation here 200 feet back from Lewis where Fifty-third Street, if extended, would be?

\*　　\*　　\*　　\*　　\*　　\*

"The Witness: \* \* \* The property that's being subdivided—that is, the Rondo Valley property, is lower than Lewis Avenue, and all of the sharp grade that drops down to the majority of the property is parallel to Lewis Avenue. It is sharper at Fifty-third Street than it is anywhere else. And the gradient at this point would be excessive according to the regulations getting down this slope.

"The Court: In excess of the eight percent maximum?

"The Witness: Yes, sir."

Mr. Harold Miller, Traffic Engineer for the City of Tulsa, testified, as follows:

"A. On major arterial streets, I believe maximum grade is five percent. On secondary streets, it's eight percent. On intersections of—on intersections it's four percent minimum of one hundred feet from the intersection.

"Q. Now, what category does South Lewis get in? A. Lewis is definitely a major arterial street.

"Q. Yes. Well, now, in your opinion is such a rule sound or unsound? A. Well, it certainly is sound; if anything, it's quite liberal.

"Q. The rule to have a percent in excess, I mean the desire upon the part of these people who appeal to have a grade at Fifty-third and Lewis in excess of eight percent, in your opinion, is that sound or unsound? A. Well, I think it's asking for a very hazardous condition for a vehicle to enter any arterial street such as Lewis on a grade in excess of eight percent. It's just asking for an accident to occur.

"Q. And in your opinion, therefore, that in so requesting that this court disapprove the commission's judgment, it 'would be hazardous in the interest of the public, is that true? A. Yes, sir."

Plaintiffs presented testimony of two engineers. One stated that if 53rd Street were extended west from Lewis Avenue, the gradient would be undesirable, but acceptable, and the other stated that the resulting gradient would not be dangerous or hazardous, except under icy conditions.

■ As we said in the first paragraph of the syllabus in Beveridge v. Harper & Turner Oil Trust, 168 Okl. 609, 35 P.2d 435, 436:

"The right of an individual to use his property as he pleases is a qualified, as distinguished from an absolute, right. It is at all times subject to the authority of the state, under its police power, to fairly and reasonably restrict the use of such property to the end that the public health, safety, and welfare will be promoted and such uses of private property prevented as would injuriously affect the rights of others in the use and enjoyment of their property."

■ Although the planning commission's approval of the Rondo Valley Addition plat may result in diminution in value of plaintiff's land for development purposes, and some inconvenience and hardship to plaintiffs and future residents of plaintiff's land, still we are unable to agree that the action of the planning commission was arbitrary, unreasonable or capricious. It was reasonably based upon the recommendation of its technical committee and engineering staff, and was calculated to promote the safety and general welfare of the people in the metropolitan area. Under such circumstances, the rights of the individual must yield to the rights of the public as a whole.

We have carefully considered all other arguments and contentions of the plaintiffs and conclude that they are either without merit or constitute harmless error.

Judgment affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, DAVISON, JOHNSON, IRWIN and BERRY, JJ., concur.