61 P.3d 332 (2002)
114 Wash.App. 174
TIMBERLAKE CHRISTIAN FELLOWSHIP, Respondent/Cross Appellant,
v.
KING COUNTY, a governmental subdivision of the State of Washington, Respondent/Cross Respondent, and
Citizens for Responsible Rural Area Development, a Washington corporation, Appellant.
No. 49824-0-I.
Court of Appeals of Washington, Division 1.
September 23, 2002.
As Amended October 8, 2002.
Publication Ordered October 30, 2002.
*334 John R. Aramburu, Law Offices of J. Richard Aramburu, Seattle, Counsel for Appellants.
Richard R. Wilson, Brian D. Todd, Hillis, Clark, Martin & Peterson, Seattle, Counsel for Respondent Timberlake Christian Fellowship.
Norm Maleng, Pros. Atty., Darren E. Carnell, Deputy, for Respondent King County.
*333 COLEMAN, J.
Citizens for Responsible Rural Area Development appeal from a Superior Court decision upholding King County's approval of a conditional use permit for a church. Citizens argue that a church the size approved by the County is prohibited under the Growth Management Act (GMA) because it constitutes urban growth in the rural area. Citizens also argue that the approved development violates King County's comprehensive plan. Finally, Citizens argue that the County erroneously considered existing nearby developments in its decision. The County and Timberlake Christian Fellowship ask us to affirm the County's decision to allow a scaled-down version of Timberlake's proposed church. In addition, Timberlake cross-appeals, arguing that any further restrictions on its church would violate its constitutional right to free exercise of religion.
We affirm. The County's decision regarding the appropriate size limitations to impose on the church was not an abuse of discretion. Further, we affirm the hearing examiner's finding that the church as conditioned was compatible with the rural area because it was supported by substantial evidence. We also hold that the hearing examiner properly considered the size of a nearby grocery store in determining how large a church Timberlake should be allowed to build. Because we affirm on these grounds, we need not reach the constitutional issues raised by Timberlake in its contingent cross appeal.

FACTS AND PROCEDURAL HISTORY
In September 1996, Timberlake submitted an application for a conditional use permit (CUP) to King County. Timberlake sought to build an 80,000-square-foot church on a 63-acre site east of Redmond, outside the county's designated urban growth area. The project as originally proposed was to proceed in two phases, with the first phase consisting of a 53,300-square-foot building with a large multi-use assembly hall, administrative offices, and classrooms. The remainder of the facility was to be built in the second phase, which called for an addition to the western end of the first building.
Churches are allowed as conditional uses within the County's rural area as long as they do not require the expansion of sewer services outside the urban growth area and otherwise meet the criteria for conditional uses outlined in King County Code (KCC) section 21A.44.040. See KCC 21A.08.050. Citizens for Responsible Rural Area Development, a group of residents of the rural area around the proposed site, opposed Timberlake's application, asking that the church be limited in size to 20,000 square feet. Churches in the rural area are generally 10,000 square feet or smaller, with only a few exceeding 20,000 square feet.
Timberlake's proposal called for the clearing of 18 acres of forest, leaving 33 acres as permanent undeveloped open space. The proposed site for the church is located in a rural residential zone, but is adjacent to several commercial buildings, including an Albertson's grocery store and BP gas station. It is also near SR 202, a state highway. A mini-storage facility also abuts the property, located just west of the Albertson's along SR 202. Nevertheless, the hearing examiner found that the area remains "predominantly rural residential in character." Examiner Finding 64.
In February 1998, the Department of Development and Environmental Services approved the application, but limited it to a structure of 48,500 square feet and a parking lot of 400 stalls, which roughly corresponded to a scaled-down version of the first phase of *335 Timberlake's proposal. Both Timberlake and Citizens appealed to a hearing examiner. Timberlake sought approval of its original plan for the 80,000-square-foot structure, whereas Citizens sought to limit the church's size to 20,000 square feet. The examiner determined that the size limitation imposed by the County illegally burdened Timberlake's religious freedom and remanded for further analysis of whether visual impacts would render the church incompatible with the character of the area. The examiner determined that the remaining CUP criteria had been met.
Timberlake, Citizens, and the County all filed land use petitions in Superior Court, each challenging various aspects of the examiner's decision. The Superior Court ruled that the examiner erred in her conclusion that size limitations violated Timberlake's religious freedoms. The court remanded for further review of the original CUP decision.
On remand, another hearing examiner reviewed the CUP and determined that the size limitations were justified under the CUP criteria outlined in the King County Code, as well as under the policies of the King County Comprehensive Plan. Timberlake had since reformulated its proposal so that phase one would consist of a 48,500-square-foot structure, with phase two constituting the remainder of the 80,000-square-foot goal. The examiner concluded that the Timberlake project constituted a proposal for "urban growth" as defined by the GMA and indicated that it was doubtful that the second phase of the project could be allowed in the rural area. The examiner noted, however, that the proposal for the second phase of the project was highly speculative at that point and, thus, required that Timberlake submit another CUP application for the second phase once the church had plans that were more concrete. The hearing examiner found that phase one of the project "is designed in a manner that is compatible with the character and appearance of existing and proposed development within the rural area[.]"
Citizens and Timberlake again filed land use petitions in Superior Court. The court affirmed the hearing examiner's ultimate decision, but ruled that the examiner erred in using comprehensive plan policies as site-specific decision criteria. The court ruled, "While the County may consult the comprehensive plan for guidance in making a discretionary decision under the conditional use permit criteria, it may not rely on the comprehensive plan as an additional zoning regulation."
Citizens applied for direct review to the Supreme Court of Washington. The Supreme Court transferred the case to this court for review of the issues raised on appeal. Additional facts are discussed in relation to the relevant arguments raised by the parties.

STANDARD OF REVIEW
This case was appealed to the Superior Court under the Land Use Petition Act (LUPA). Accordingly, the applicable standards of review are those set forth in LUPA:
The court may grant relief only if the party seeking relief has carried the burden of establishing that one of the standards set forth in (a) through (f) of this subsection has been met. The standards are:
(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts;
(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
(f) The land use decision violates the constitutional rights of the party seeking relief.
RCW 36.70C.130(1). This statute reflects a clear legislative intention that this court give *336 substantial deference to both legal and factual determinations of local jurisdictions with expertise in land use regulation.
In addition, this case involves a CUP application. The very nature of this type of land use decision is that of a use allowed at the discretion of local government, subject to those conditions that are deemed appropriate by local decision makers. Thus, when reviewing such decisions, we recognize the broad range of discretion counties have in determining whether to grant a particular application and the conditions that are appropriate in each case. Finally, we review this case, bearing in mind that local governments have been admonished by courts to use flexibility when applying local land use regulations to churches in order to avoid conflict with state and federal constitutional religious freedoms. See, e.g., City of Sumner v. First Baptist Church, 97 Wash.2d 1, 9-10, 639 P.2d 1358 (1982).

ANALYSIS
A. The King County Code
The King County Code allows churches within a rural area as long as they do not require expansion of sewer service outside the urban growth area. KCC 21A.08.050. The code also outlines seven criteria that must be met before granting any CUP. See KCC 21A.44.040.[1] The first criterion, which is the only one relevant to this appeal, provides that a CUP shall be granted only if "[t]he conditional use is designed in a manner which is compatible with the character and appearance of an existing, or proposed development in the vicinity of the subject property[.]"
In addition to the seven criteria outlined in KCC 21A.08.050, the code gives the County broad discretion to impose conditions on a project beyond those contained in the original application. KCC 20.24.080(B) provides that a hearing examiner may grant an appeal from a County CUP decision
with such conditions, modifications and restrictions as the examiner finds necessary to make the application or appeal compatible with the environment and carry out applicable state laws and regulations, including [the State Environmental Policy Act,] 43.21C RCW, and the regulations, policies, objectives and goals of the comprehensive plan, the community plans, subarea or neighborhood plans, the zoning code, the subdivision code and other official laws, policies and objectives of King County.... (Emphasis added).
This broad list of permissible considerations clearly encompasses both the GMA and the County's comprehensive plan.
Citizens argue that the Timberlake permit violates the GMA and the King County Comprehensive Plan because it constitutes urban growth in a rural area. Timberlake argues that neither the GMA nor the comprehensive plan may be applied directly at the project-review level. Timberlake's argument has merit. The GMA does not have site-specific effect at the project level. Instead, it establishes a general framework in which local governments are required to plan *337 in accordance with certain guidelines. See Ass'n of Rural Residents v. Kitsap County, 141 Wash.2d 185, 188, 4 P.3d 115 (2000) (calling GMA "a comprehensive planning framework under which local governments are required to plan according to general mandates established by the Legislature.") (emphasis added). Further, a county's comprehensive plan is generally to be used as a "guide" or "blueprint," and as such, it is not usually appropriate to use it to make specific land use decisions. Citizens for Mount Vernon v. City of Mount Vernon, 133 Wash.2d 861, 873-74, 947 P.2d 1208 (1997). Accordingly, if there is a conflict between the comprehensive plan and the zoning regulations, the regulations must prevail. Mt. Vernon, 133 Wash.2d at 874, 947 P.2d 1208.
But although we agree that the GMA and comprehensive plans do not serve as development regulations, parties are not prevented from arguing that a specific discretionary approval is inconsistent with the GMA or comprehensive plan policies. See Mt. Vernon, 133 Wash.2d at 873, 947 P.2d 1208 (Although strict adherence to comprehensive plan not required, "any proposed land use decision must generally conform with the comprehensive plan."). Further, local decisionmakers are not prohibited from citing specific comprehensive plan policies to support their exercise of discretion with regard to a particular CUP application. But where, as here, an appellant challenges a land use decision on the basis of its failure to generally conform with the comprehensive plan or the GMA, such a challenge must be analyzed in the context of the criteria established at the local level. Thus, we look to the GMA and the comprehensive plan to determine whether the county has unreasonably interpreted the CUP criteria or abused its discretion in imposing conditions on the project.
B. The Growth Management Act
Although the GMA does not prohibit specific land uses, it does require that local planning authorities draw a line between urban and rural areas. RCW 36.70A.110(1) requires covered counties to designate an urban growth area, "outside of which growth can occur only if it is not urban in nature." The GMA further defines "urban growth" as
"growth that makes intensive use of land for the location of buildings, structures and impermeable surfaces to such a degree as to be incompatible with the primary use of land for the production of food, other agricultural products, or fiber, or the extraction of mineral resources, rural uses, rural development, or natural resource lands[.]"
RCW 36.70A.030(17). The hearing examiner found that the Timberlake project as proposed would constitute "urban growth" under the above definition.[2]
But the purpose of the GMA is not necessarily frustrated every time growth of an urban nature occurs in the rural area. The GMA states that comprehensive plans should provide for "a variety of rural densities." RCW 36.70A.070(5)(b). And in Vashon-Maury v. King County, CPSGMHB No. 95-3-0008 (October 23, 1995)[3] the Growth Management Hearings Board held that proposed uses that meet the definition of urban growth may be allowed in the rural area as long as "the use, by its very nature, is dependent upon being in a rural area and is compatible with the functional and visual *338 character of rural uses in the immediate vicinity[.]" The GMHB went on to define a use that is "dependent upon being in a rural area" as including uses that "serve a rural population or other activities in the rural area." Vashon-Maury at 49. This requirement is reflected in King County Comprehensive Plan Policy R-208, which provides that nonresidential uses may include those that provide "convenient local services for nearby residents." The hearing examiner applied this policy to the Timberlake proposal and found that the church as limited met the local nexus requirement because 40 percent of its current attendees live in the same zip code in which the church is to be located.
The hearing examiner did not abuse his discretion when he decided that a 48,500-square-foot limitation was sufficient to promote the goals of the GMA and the comprehensive plan. Rather, he struck an appropriate balance between the needs of the church and the concerns of the neighbors in the rural area. Churches are not purely rural or urban uses, but rather fall within a gray zone. There can be no bright line drawn to determine when a church becomes large enough to constitute "urban growth" that is incompatible with a rural setting. Further, in order to balance the need for conformity with local codes against the freedom of religion guaranteed in the state and federal constitutions, local governments have been directed to be flexible and creative when applying local zoning ordinances to churches. See City of Sumner v. First Baptist Church, 97 Wash.2d 1, 9-10, 639 P.2d 1358 (1982).
The record indicates that the 40 percent of Timberlake's congregation who live in the area represent the greatest concentration of the church's current attendees in a single zip code. And, although that zip code corresponds to both the nearby rural area and an adjacent urban growth area, the examiner concluded that the term "nearby residents" in this case should not be limited to nearby residents in the rural area, but could include those who had to cross the urban-rural boundary to attend. Under these circumstances, the hearing examiner was justified in concluding that 40 percent of the church's congregation was enough of a local nexus to justify a church building of the size permitted. Certainly, his decision cannot be said to be an abuse of discretion.
The second part of the test enunciated in Vashon-Maury is whether the church is "compatible with the functional and visual character of rural uses in the immediate vicinity." This part of the test is reflected in the first CUP criterion, which requires compatibility with existing or proposed development. The hearing examiner concluded that "Phase 1 of the TimberLake Church proposal is designed in a manner that is compatible with the character and appearance of existing and proposed development within the rural residential neighborhood in which the property is located[.]" The determination of whether a project is compatible with the surrounding area is a factual determination and should be affirmed on appeal if supported by substantial evidence in the record. See Hilltop Terrace Ass'n v. Island County, 126 Wash.2d 22, 34, 891 P.2d 29 (1995).
In this case the factual record clearly supported the examiner's finding on this issue. The record indicated, and the examiner took into account, that a 10-acre Albertson's shopping center is adjacent to the south, and SR 202, which is also adjacent, is already a busy arterial. The record also indicated that planned road enhancements to another adjacent street will contribute to increased traffic on that road as well. The County considered extensive evidence regarding the visual impact of the church on nearby residents, and the hearing examiner imposed a number of conditions designed to mitigate the visual impact of the church on the neighborhood. These included vegetative buffering, a condition that exterior lights be shielded and turned off after 10:30 p.m., and a condition that noise levels remain below a certain level. These facts clearly supported the examiner's conclusion that the church as conditioned would be compatible with the area. The County's approval of the Timberlake project was not inconsistent with the purposes of the GMA.
C. The Comprehensive Plan
For similar reasons, we also reject Citizens' argument that the Timberlake proposal *339 is inconsistent with the principles reflected in the King County Comprehensive Plan. As noted above, the decision of whether to impose conditions pursuant to the comprehensive plan, as well as the scope of those conditions, is one in which the County has broad discretion. See KCC 20.24.080. Comprehensive plan policies R-208 and R-209 provide that nonresidential uses in the rural area "should" be limited to those that provide convenient services to nearby residents. We have already concluded in our above analysis under the GMA that the hearing examiner's decision regarding the appropriate size restrictions to impose was not an abuse of discretion. That analysis is equally applicable here. The other aspirational policies cited by Citizens state generally that the character of rural areas should be maintained and that "small churches" are appropriate within the rural area.[4] As noted above, the hearing examiner's finding that the project, as conditioned, was compatible with character of the rural area is supported by substantial evidence in the record. Accordingly, we hold that the hearing examiner properly exercised his discretion in deciding what conditions to impose on the project in order to make it compatible with the comprehensive plan.

D. Reliance on Existing Development

Finally, Citizens argue that the hearing examiner erred in relying on the adjacent Albertson's store as a precedent in deciding how large a structure to allow Timberlake to build. Citizens argue that the purpose of the GMA is frustrated by such consideration, which invites the type of urban "sprawl" that the GMA seeks to prevent. But the first CUP criterion requires the deciding authority to consider existing nearby development in determining whether the applicant has demonstrated that "[t]he conditional use is designed in a manner which is compatible with the character and appearance of an existing, or proposed development in the vicinity of the subject property." KCC 21A.44.040(A).[5] Thus, the hearing examiner cannot be faulted for considering the size of nearby buildings in determining how large a church should be allowed on Timberlake's property.
Further, although we are mindful of the concerns expressed by Citizens, we note that the County and Timberlake took a number of measures to ensure that the rural nature of the area is preserved, including vegetative buffering, a permanent conservation easement, and a number of other compromises and conditions that have emerged from the collaborative CUP process. Thus, although the use of an adjacent, nonconforming structure as a precedent for a structure of the same size could in some instances encourage urban sprawl, we are persuaded that the County's decision in this case was a permissible exercise of the discretion inherent in CUP decisions.

CONCLUSION
The hearing examiner's March 31 Revised Decision on Appeals, as modified on reconsideration, is reinstated.[6] Accordingly, we need not reach the issues raised by Timberlake in its contingent cross-appeal. Affirmed.
WE CONCUR: BECKER, C.J., and SCHINDLER, J.
NOTES
[1] KCC 21A.44.040 provides as follows:

A conditional use permit shall be granted by the county, only if the applicant demonstrates that:
A. The conditional use is designed in a manner which is compatible with the character and appearance of an existing, or proposed development in the vicinity of the subject property;
B. The location, size and height of buildings, structures, walls and fences, and screening vegetation for the conditional use shall not hinder neighborhood circulation or discourage the permitted development or use of neighboring properties;
C. The conditional use is designed in a manner that is compatible with the physical characteristics of the subject property;
D. Requested modifications to standards are limited to those which will mitigate impacts in a manner equal to or greater than the standards of this title;
E. The conditional use is not in conflict with the health and safety of the community;
F. The conditional use is such that pedestrian and vehicular traffic associated with the use will not be hazardous or conflict with existing and anticipated traffic in the neighborhood; and
G. The conditional use will be supported by adequate public facilities or services and will not adversely affect public services to the surrounding area or conditions can be established to mitigate adverse impacts on such facilities. (Ord. 11621 sec. 108, 1994: Ord. 10870 sec. 625, 1993) (emphasis added). The first criterion is the only one at issue on appeal.
[2] Although the hearing examiner did not explicitly find that the project as conditioned constitutes urban growth, he found that the original proposal to be urban growth on the basis of factors that are virtually unchanged by the restrictions imposed:

"What remains intrinsically urban about the TimberLake proposal is the intensity and concentration of uses on the 18 acre development site, a characteristic that is ultimately unrelated to whether the area of such use is a small or large percentage of the parent parcel."
Examiner Finding 63. The scaled-down version of Timberlake's proposal will still require the clearing of 18 acres, which will be "irreversibly committed to a non-rural function." Thus, for purposes of our review, we assume that the examiner's finding on this issue applies to both the 80,000-square-foot project that was proposed and the scaled-down version that the County permitted.
[3] Although administrative decisions are not binding on this court, we find guidance in their interpretations of the law, especially where, as here, the decision is made by the body primarily charged with interpreting a given statute. See East v. King County, 22 Wash.App. 247, 255-56, 589 P.2d 805 (1978).
[4] Citizens also cites Policy R-309, which states that small existing commercial uses in the rural area should not be expanded beyond the limits of the existing zoning. As noted by the hearing examiner, this particular policy deals with expansion of existing uses, and as such it is not implicated, much less violated, by the Timberlake proposal.
[5] Citizens has not challenged the validity of this CUP criterion, and at any rate, such a challenge would be beyond the jurisdiction granted courts hearing LUPA petitions. See Somers v. Snohomish County, 105 Wash.App. 937, 21 P.3d 1165 (2001); Caswell v. Pierce County, 99 Wash.App. 194, 199, 992 P.2d 534, rev. denied, 142 Wash.2d 1010, 16 P.3d 1265 (2000).
[6] The trial court struck several of the hearing examiner's conclusions because the court determined that the examiner had erred in applying the comprehensive plan policies as "additional zoning regulations." We agree with the trial court that the hearing examiner overstated the function of the comprehensive plan when he stated that the plan performs a "regulatory function." But we note that the hearing examiner appeared to examine the comprehensive plan policies only within the discretion granted the examiner by KCC 20.24.080(B).