2004 OK CIV APP 74

Colin HOLTZEN, Tracey Holtzen, Scott Trizza, Mike Todd, Misty Todd, William A. Weinrich, Ursula Mueller, Ingeborg Mueller, Daniel B. Graves, Cassie Graves, Tom Watson, Penney L. Kinnamon, Betty J. Beil, Ann Raska, and Midtown Neighborhood Alliance, Plaintiffs/Appellees,

v.

TULSA COUNTY BOARD OF ADJUSTMENT, Defendant/Appellant,

and

Robert K. Bell Enterprises, Inc., Appellant.

No. 99,421.

Court of Civil Appeals of Oklahoma, Division No. 4.

May 4, 2004.

Certiorari Denied Sept. 13, 2004.

Randall S. Pickard, Randall S. Pickard, P.C. Tulsa, OK, for Plaintiffs/Appellees.

Linda K. Greaves, Assistant District Attorney, David T. Iski, Assistant District Attorney, Tulsa, OK, for Defendant/Appellant Tulsa County Board of Adjustment.

Roy D. Johnsen, Janine H. VanValkenburgh, Epperson & Johnsen, Tulsa, OK, for Appellant Robert K. Bell Enterprises.

OPINION ON REHEARING

JERRY L. GOODMAN, Presiding Judge.

¶ 1 Defendant, Tulsa County Board of Adjustment, and Robert K. Bell Enterprises, Inc., appeal the trial court's May 29, 2003, grant of summary judgment in favor of plaintiffs (Neighbors). The trial court's judgment reversed the Board's grant of a special exception for construction and operation of a roller coaster. This appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(a)(1), 12 O.S.2001, ch. 15, app. 1. Based on the facts and applicable law, we reverse and remand for further proceedings.[1]

---

1. We hereby grant each party's petition for rehearing. This opinion replaces both our earlier hearing. This opinion replaces both our earlier opinion issued December 9, 2003, and a correction order filed December 29, 2003.

## UNDISPUTED FACTS

¶ 2 Bell Enterprises (Bell) operates Bell's Amusement Park inside the Tulsa County Fairgrounds, pursuant to a sublease agreement with the Tulsa County Facilities Authority. The Authority leases the Fairgrounds from Tulsa County, with the area also being designated as the Expo Square Special District.

¶ 3 Bell proposed expanding its amusement park westward inside the Authority's property in order to construct and operate a new roller coaster, which would be located just west of Bell's existing roller coaster. The proposed site is currently used for parking for the amusement park. It is otherwise open space and lies between a Tulsa neighborhood to the west and Bell's existing roller coaster to the east.

¶ 4 The Authority approved Bell's plan. Bell then applied for a special exception from the Tulsa County Board of Adjustment. The proposed site is zoned AG (Agriculture), and the Tulsa County Zoning Code allows the operation of amusement parks in the area as a special exception.[2]

¶ 5 The Board conducted a hearing. Some residents supported Bell's proposal; others objected. The Board granted the special exception. Neighbors, who live near the proposed site, filed a notice of appeal in district court.

¶ 6 Neighbors later filed a motion for summary judgment, based on the conflict between the Zoning Code, which authorized the Board to grant the special exception, and the comprehensive plan for Expo Square. The plan designated the proposed site as "low density," which effectively prohibited the proposed use. Neighbors argued the Board had no authority to depart from the plan.

¶ 7 The trial court granted Plaintiff's motion for summary judgment and reversed the Board's grant of the special exception. Bell and the Board appeal.

---

**2.** Despite its name, a special exception is actually not an exception to a zoning code, but is a permitted use sanctioned by legislative authority under certain conditions. 83 Am.Jur.2d *Zoning and Planning* § 858 (2003).

## STANDARD OF REVIEW

¶ 8 Summary judgment is used to reach a final judgment where there is no dispute as to any material fact, *Indiana Nat'l Bank v. Dep't of Human Servs.*, 1993 OK 101, ¶ 10, 857 P.2d 53, 59; and where one party is entitled to judgment as a matter of law. *Sellers v. Okla. Pub. Co.*, 1984 OK 11, ¶ 23, 687 P.2d 116, 120. We review a grant of summary judgment de novo. *Young v. Macy*, 2001 OK 4, ¶ 9, 21 P.3d 44, 47. In a de novo review, we have plenary, independent, and non-deferential authority to determine whether the trial court erred in its application of the law. *Id.*

## ANALYSIS

¶ 9 Tulsa County's zoning laws clearly allow the Board to grant the special exception to Bell. Section 1680.1 of the County Zoning Code (Zoning Code) provides that special exceptions may be granted for certain designated purposes, including "Special Exception Uses as designated and regulated within the permitted use provisions of the zoning districts."[3]

¶ 10 The tract of land involved is zoned AG (Agriculture). Section 310 of the Zoning Code specifically permits "Commercial Recreation: Intensive" uses in agriculture districts. Indisputably, "Commercial Recreation: Intensive" uses include the operation of an amusement park such as Bell's as a special exception. The Code thus grants the Board authority to approve the proposed use as a special exception for the specific tract of land at issue here.

¶ 11 Section 1680.3 of the Zoning Code states: "The Board of Adjustment shall hold the hearing, and upon the concurring vote of three members may grant the Special Exception after finding that the Special Exception will be in harmony with the spirit and intent of the Code, and will not be injurious to the neighborhood or otherwise detrimental to the public welfare...." The Board voted to ap-

---

**3.** The Tulsa County Zoning Code can be found at *http://www.incog.org.*

prove the special exception with certain limitations proposed by Bell regarding matters such as sound dampening, limited lighting, and a screening wall. Under the limitations, the roller coaster track would be at least 79 percent enclosed and possibly located underground.

¶ 12 The trial court reversed the Board's decision. According to its journal entry of judgment, the trial court relied on language found in the comprehensive land use plan for Expo Square. The plan was adopted by the Tulsa Metropolitan Area Planning Commission and approved by the Board of Commissioners of the City of Tulsa (at the time, the governing body of the city) and the Board of County Commissioners of Tulsa County. The plan designated the site for the proposed roller coaster as "low intensity." All parties agree that operating a roller coaster is not a low intensity use. Furthermore, an explanatory note to the plan states that the low intensity designation offers some protection for nearby residents, as the open land separates the neighborhood from the noise and traffic created by Bell's existing roller coaster.

¶ 13 The trial court concluded that the Board-approved use violated the comprehensive plan. The trial court acknowledged that the Board had the authority to decide special exceptions, but held that such authority was administrative and limited by the plan.

¶ 14 In granting the motion for summary judgment, the trial court effectively determined that as a matter of law, the Board of Adjustment was without authority to grant a special exception that was not in accord with the comprehensive plan. This was essentially the theory behind Neighbors' argument.

¶ 15 In support of its decision, the trial court cited *Bankoff v. Board of Adjustment of Wagoner County*, 1994 OK 58, 875 P.2d 1138. In *Bankoff*, the applicant applied for a conditional use permit (CUP) to operate a landfill.[4] At the time of the application,

Wagoner County's zoning regulations allowed the use that the applicant wished to make, under certain conditions. The Board of Adjustment denied the permit, and the applicant appealed to the district court. The trial court held a trial de novo[5] and reversed the Board's decision ordering the Board to "work with [the applicant] to prepare a CUP setting forth appropriate conditions...." *Id.* at ¶ 2, 875 P.2d at 1140.

¶ 16 The Oklahoma Supreme Court affirmed, holding the trial court's decision was not clearly contrary to the weight of the evidence. The Court quoted a 1935 decision, *Van Meter v. H.F. Wilcox Oil & Gas Co.*, 1935 OK 188, 41 P.2d 904, to the effect that while a board of adjustment has the power to grant special exceptions, "[t]he board of adjustment cannot have unconfined and unrestrained freedom of action. It is not at liberty to depart from the comprehensive plan embodied in the ordinance.... In short, the board is refinedly limited in its statutory authority and assumption of power, and this limitation should not be lightly abused." *Bankoff* at ¶ 23, 875 P.2d at 1144–45 (emphasis omitted). Neighbors assert this language means the Board did not have the authority to grant a special exception which would allow property to be used in a way that conflicts with the plan.

¶ 17 Neighbors' assertion is erroneous for two reasons. First, *Bankoff* does not involve a special exception use that is in conflict with a comprehensive plan. In fact, it does not even involve a separate comprehensive plan. It speaks of a plan "embodied in the ordinance." In *Bankoff*, the ordinance allowed approval of a special exception for the proposed use. There was no comprehensive plan or proposed use to the contrary.

¶ 18 Second, we have examined the *Van Meter* decision, which is the source for the above quotation. It, too, does not involve a separate comprehensive plan but speaks of a plan "embodied in the ordinance." It is clear

**4.** This "conditional use" permit is synonymous with the "special exception" contained in the Tulsa County Zoning Code. *See Bankoff* at n. 18.

**5.** *Bankoff* is distinguishable from the instant case in that the board's decision there was appealed under what is now 19 O.S.2001 § 866.24, which

requires the trial court to conduct a trial de novo. As discussed later in this opinion, the instant case is governed by 19 O.S.2001 § 863.22, which provides for a judicial review of the Board's required findings.

that both decisions are not concerned with a separate comprehensive plan, but instead are referring to the general principles found in the zoning laws and the necessity for a board's actions " be[ing] harmonized with the general intent, design, and purpose of the ordinance." *Van Meter* at ¶ 19, 41 P.2d at 909. This point is made clearer by *Van Meter's* use of a quotation from *People ex rel. Cotton v. Leo,* 110 Misc. 519, 180 N.Y.S. 554, 557 (N.Y.Sup.Ct.1920): "Apparently the board's contention is that this section gives them the power to do whatever they think is right, regardless of the provisions of the statute. But it does not grant any such power. The board cannot wholly disregard the provisions of the statute or of the regulations." *Van Meter* at ¶ 23, 41 P.2d at 910.

¶ 19 None of these cases involve a special exception at odds with a comprehensive plan. In fact, none of the cases involve a comprehensive plan. Where they speak of such a plan, they are referring to the general principles reflected in the zoning laws themselves. Consequently, the Board acted in accord with these decisions, because it did exactly what the Zoning Code required it to do. It granted the special exception specified for the subject property subject to certain conditions.

¶ 20 We therefore conclude that the authority cited by Neighbors does not stand for the proposition that the Board of Adjustment is prohibited from granting a special exception for a use not in accord with the comprehensive plan. In fact, *Bankoff* notes that not a single reported Oklahoma zoning case since 1972 has involved special exceptions, and we have found none on point since *Bankoff* was decided in 1994. *Bankoff* at n. 18.

█ ¶ 21 Nevertheless, while we have found no Oklahoma case on point, the overwhelming weight of authority from other jurisdictions holds that where a conflict exists, the zoning laws themselves prevail over the comprehensive plan. In fact, Neighbors have failed to cite any authority to the contrary. As a general proposition, a comprehensive plan is considered a guide and is advisory in nature, and not the equivalent of a zoning law. *Timberlake Christian Fellowship v. King County,* 114 Wash.App. 174, 61 P.3d 332, 336–37 (2002); *see also* 83 Am. Jur.2d *Zoning and Planning* § 22 (2003). It has been said that "[a] land use plan is meant to be just that—a plan. It is not to be legally binding ..." *Taylor v. City of Little Rock,* 266 Ark. 384, 583 S.W.2d 72, 73 (1979). Furthermore, there are numerous decisions holding that where there is a conflict between the comprehensive plan and a use permitted under a zoning ordinance, the zoning ordinance controls. *Sanders Orchard v. Gem County ex rel. Bd. of County Comm'rs,* 137 Idaho 695, 52 P.3d 840 (2002); *Forks Township Bd. of Supervisors v. George Calantoni & Sons, Inc.,* 6 Pa.Cmwlth. 521, 297 A.2d 164, 166–67 (1972).[6]

█ ¶ 22 Given these principles, and the great weight of authority we have examined, the proposition that the plan takes priority over the Zoning Code is erroneous. Clearly, the Code grants the Board authority to grant the special exception and that authority is not limited by the plan so as to prohibit consideration of the special exception application. Accordingly, we reverse the trial court's grant of summary judgment and remand the matter to the trial court.

## JUDICIAL REVIEW ON REMAND

¶ 23 This action is governed by 19 O.S. 2001, §§ 863.1–863.48.[7] Section 863.22 states:

---

**6.** In its filings, Bell's included an affidavit from an official with the Indian Nation Council of Governments, stating the plan states that it is a guide and that there may be times when it would be desirable to take action not in accord with the plan. If the plan itself indeed indicated the Zoning Code would take priority, that could be dispositive of the matter. However, while the record is somewhat unclear, it appears this language has not been adopted by the County.

**7.** The statutes contained in Title 19 providing planning and zoning for different classes of counties and municipalities can be confusing to those uninitiated in this field of practice. The confusion reflected in this Court's original opinion was corrected by its order filed December 29, 2003. However, this Court has not been alone in applying the wrong statute. *Glaser v. Tulsa Metropolitan Area Planning Commission,* 1961 OK 47, 360 P.2d 247, is another example. There, the aggrieved parties appealed to the Tulsa County District Court from the Tulsa Metropolitan Area

A judicial review in the District Court may be had of any ruling, regulation, interpretation, order, requirement, refusal, permit, approval, or decision made under the terms of this act [19 O.S.2001 § 863.1 et seq.], when such action is alleged to be arbitrary, unreasonable or capricious, and that by reason thereof such action has worked or, if enforced, will work an unnecessary hardship on or create substantial harm or loss to the complaining party.

¶ 24 This statute is the result of an amendment in 1959, and is different from its predecessor in two ways. First, the earlier version provided for an appeal, and did not use the term "judicial review." This distinction does not appear significant, as the line between these two terms has become blurred. *ITT Lighting Fixtures v. Nat'l Labor Relations Bd.*, 718 F.2d 201, n. 2 (2nd Cir.1983). This is reflected in *Black's* definition of the terms: a judicial review is defined as a court's review of a lower court or administrative body's factual or legal findings. An appeal is defined as the submission of a lower court or agency's decision to a higher court "for review." *Black's Law Dictionary*, 852 and 94 (7th ed.1999).

¶ 25 Second, and more importantly, the former version of the statute required the trial court to conduct a trial de novo, and empowered the trial court with the same power and authority as a board of adjustment. The scope of trial de novo was explained in *Bankoff*, 1994 OK 58, ¶ 20, 875 P.2d 1138, 1143–44: "There must be a complete examination of all issues, both of fact and law. The cause stands as if it has never been resolved." De novo review is also mandated in appeals from *municipal* boards of adjustment. *See* 11 O.S.2001 § 44–110(D); *Hargrave v. Tulsa Bd. of Adjustment*, 2002 OK 73, ¶¶ 4, 6, 55 P.3d 1088, 1089–90.

¶ 26 By contrast, the present version of 19 O.S.2001 § 863.22 provides for judicial review of any action of the Board to determine if it was arbitrary, unreasonable, or capricious,

and that by reason thereof such action, if enforced, "will work an unnecessary hardship on or create substantial harm or loss to the complaining party." The statute does not provide for trial de novo. In such cases, where the relevant authorizing statute does not specifically provide for a trial de novo in the district court, the court must limit its consideration to a review of the record. *In re Gruber*, 1923 OK 204, ¶ 12, 214 P. 690, 692.

¶ 27 In *Gruber*, the Oklahoma Supreme Court addressed a situation where the statute creating a right to appeal a decision of a lower tribunal to the district court did not "specif[y] the manner or the nature of the proceedings on appeal." *Id.* at ¶ 4, 214 P. at 692. There, the statute merely provided that an aggrieved party "may appeal from such decision to the district court." *Id.* at ¶ 3, 214 P. at 691. Nevertheless, the district court tried the appeal de novo. The Supreme Court stated that "this point is the most important among the errors urged in this court." *Id.* at ¶ 5, 214 P. at 692.

¶ 28 After a thorough analysis, the Supreme Court reversed and remanded the trial court's decision. The Court pointed out that "[t]he fundamental idea of the word ['appeal'], without reference to any particular statute, involves the idea of a review of the proceedings in a trial which has already been had, and not the trial de novo of the case." *Id.* at ¶ 7, 214 P. at 692.

Under statutes giving the right of appeal no case can be tried de novo in the appellate court unless such statute expressly permits or directs such a course to be pursued....

Therefore, treating the subject from this standpoint alone, we are bound to hold that the district court erred in attempting to try the case de novo under the ... statute[.]

The precedents and the nature of the proceedings in this jurisdiction have been that where the appeal is not taken by trial

Planning Commission's approval of a subdivision plat. Appeals from the Commission are governed by 19 O.S.2001 § 863.23, which provides that on appeal such matter shall be tried de novo. Trials de novo are decided on the weight of the evidence. However, in *Glaser*, the trial

court applied the judicial review standard of "arbitrary, unreasonable, or capricious" found in § 863.22, clearly an erroneous application of this statute to the trial de novo requirement of § 863.23. Apparently, this error was not urged on appeal.

de novo, the appellate court treats the appeal in the nature of the old common-law "writ of error"; that is, the appellate court does not hear additional evidence, but confines itself to error appearing in the record, and sometimes, when the question is properly raised, as to whether or not the findings of fact of the inferior tribunal are supported by the evidence as taken and heard by it.

*Id.* at ¶¶ 10–12, 214 P. at 692.

¶ 29 Further, "[o]n a partial or incomplete record, the appellate court will presume any conceivable state of facts within the scope of the pleadings and not inconsistent with the record which will sustain and support the ruling or decision complained of...." *Id.* at ¶ 16, 214 P. at 693. Moreover, an appellate court "will not, for the purpose of finding reversible error, presume the existence of facts as to which the record is silent. Thus[,] in support of the ruling or decision complained of, it will be presumed, on appeal, as to matters not fully disclosed by the record, that public officials performed their duty." *Id.*

¶ 30 Along this same line it should be pointed out that just as § 863.22 provides merely for "judicial review" in the district court, 12 O.S.2001 § 951(a) provides that:

A judgment rendered, or final order made, by any tribunal, board or officer exercising judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court except where an appeal to some other court is provided by law.

¶ 31 In defining the district courts' appellate jurisdiction under § 951, the Oklahoma Supreme Court has specifically found that "[Sec.] 951 does not provide for a trial de novo by the district court." *In re White*, 1960 OK 188, ¶ 8, 355 P.2d 404, 406.

**CONCLUSION**

■ ¶ 32 On remand, the trial court, sitting as an appeal tribunal, shall confine its review to the record of the proceeding before the Board in determining whether the requirements of § 863.22 have been met.[8] In performing its judicial review, the trial court should at all times indulge in the presumption that error has not been committed by the Board unless specifically pointed out by the appellant. *See Gruber* at ¶ 18, 214 P. at 693.

¶ 33 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

REIF, J., and STUBBLEFIELD, J. (sitting by designation), concur.

---

**8.** The record includes § 1690.1 of the Tulsa County Zoning Code, which correctly states that the trial court shall apply the standard of review found in § 863.22. However, we note § 1690.1 also states that on appeal, the parties can present any admissible evidence they wish to present, and that the trial court may hear and consider that evidence regardless of whether the evidence was presented to the Board of Adjustment. This portion of § 1690.1 (a county code provision) is in conflict with § 863.22 (a statute) and with the principles expressed above. The general rule is that a local ordinance in conflict with a state statute is void and must fail. *Constant v. Brown*, 1941 OK 205, ¶ 8, 114 P.2d 477, 478; *see also Nucholls v. Bd. of Adjustment of City of Tulsa*, 1977 OK 3, ¶ 11, 560 P.2d 556, 560. Therefore, this portion of § 1690.1 is void and should be disregarded by the trial court on remand.